**CITY OF GRANDVIEW v. INGLE.**

No. 1654.

Court of Civil Appeals of Texas. Waco.

Jan. 2, 1936.

Rehearing Denied Jan. 30, 1936.

Frazier & Averitte, of Dallas, for appellant.

E. A. Rice and E. B. Helsley, both of Cleburne, for appellee.

ALEXANDER, Justice.

Certain relief laborers while doing work under the National Industrial Recovery Act (48 Stat. 195) removed a concrete slab from a crosswalk over a ditch in the city of Grandview for the purpose of cleaning the ditch. They failed to replace the slab, and as a result plaintiff fell into the ditch and was injured. Plaintiff sued the city of Grandview for the personal injuries sustained by him and recov-

ered judgment for the sum of $325. The city appealed.

The relief work that was being done in Johnson county under the National Industrial Recovery Act was under the supervision of the Johnson County Relief Association. A subcommittee under this association had charge of the relief work being done in the city of Grandview and the surrounding vicinity. A. B. Davis and O. L. McCown were members of this committee. Davis was also mayor of the city of Grandview and McCown alderman thereof. The relief laborers were paid by the national government. W. G. Barry, a relief worker, was in charge of the crew of relief workers who removed the concrete slab in question. The evidence shows that the city council of the city of Grandview was composed of five members. Two of these members were inactive, so that in reality the affairs of the city were conducted by three members. Alderman Luck was chairman of the street committee, but it appears that two or three months prior to plaintiff's injury Alderman McCown had employed one Atwell on behalf of the city to repair the crossing in question, but for some cause the crossing was not repaired at that time. Mrs. Jim Ingle testified that after the accident she had a talk with Mr. McCown. In this connection she testified: "He said he got Mr. Barry to oversee the work because he felt like he could do it and was capable of doing it right, that he had tried to get it fixed for sometime and he couldn't, and he got Mr. Barry to oversee the work so it could be fixed up right; he felt that way about it."

Another witness testified that Mr. McCown was present when Barry was employed to superintend the relief workers in repairing the streets. Mayor Davis testified that nearly every one was wanting ditches cleaned out and were reporting bad culverts for repair, and that, when these reports came in, they were turned over to Mr. Barry, and that they left it up to him to clean the ditches and repair the culverts as he thought best. Both McCown and Davis further testified they went out and inspected the crossing in question while the relief workers were repairing it at about 2 o'clock in the afternoon prior to the accident that night. They further testified that they knew that Barry was in charge of those who were repairing the crossing and that· it was with their knowledge and consent that these laborers were working on the crossing at the time. The evidence further shows that at the conclusion of the day's work the laborers failed to replace the slab, and as a result plaintiff fell into the ditch that night and was injured. There was some evidence to the effect that, after the laborers quit work for the day and before the accident occurred that night, O. L. McCown, one of the city aldermen, discovered that the slab had been removed and not replaced, but he took no precaution to prevent an accident.

The jury, in answer to special issues, found that the work in question was being done with the knowledge and consent of A. B. Davis and O. L. McCown; that McCown solicited W. G. Barry to act as supervisor of the work that was being done at the street crossing in question; that there was no light, barricade, or other warning in the vicinity of the open ditch prior to the accident in question; that the failure to place a light, barricade, or other warning on said ditch constituted negligence on the part of the defendant, its agents, servants and employees, which negligence was the proximate cause of the injuries sustained by plaintiff; that O. L. McCown knew of the condition of the crossing in question after the slab had been removed and before the accident occurred on the night in question; that the plaintiff sustained injuries as the result of said accident, and was damaged in the sum of $325.

Appellant's first contention is that the court should have given an instructed verdict in its behalf because the evidence showed that the slab in question was removed by persons not acting on behalf of the city, and no agent of the city knew of the defect in time to have repaired same by the exercise of reasonable diligence prior to plaintiff's injury.

A municipality is liable for damages for personal injuries caused by defects in its sidewalks or crosswalks where the defect in such walk was caused by the city or under its authority, or where there was a negligent failure of the city to cure the defect within a reasonable time after notice thereof. 30 Tex.Jur. 529, § 292; Hanks v. City of Port Arthur, 121 Tex. 202, 48 S.W.(2d) 944, 83 A.L.R. 278. If the defective condition is due to the act of the municipality itself or of its contractors or employees, no other notice· of any kind, either actual or constructive.

is necessary in order to render the municipality liable for damages proximately caused thereby. McQuillin, Municipal Corporations, vol. 6, § 2808; 43 C.J. 949; 13 R.C.L. 332, 338, and 355; Willis v. City of San Antonio (Tex.Com.App.) 280 S.W. 569; City of Austin v. Ritz, 72 Tex. 391, 399, 9 S.W. 884; Patterson v. City of Austin (Tex.Civ.App.) 29 S.W. 1139; City of Henderson v. Fields (Tex.Civ.App.) 194 S.W. 1003.

■ It is only necessary to determine whether or not the defect in the crosswalk in question was caused by the city or its employees. It is true that the laborers who removed and failed to replace the slab were working under the National Industrial Recovery Act and were receiving their pay from the federal government, but these are not the controlling issues. 39 C.J. 1270, § 1456. "A servant may be loaned or hired by his master for some special purpose so as to become, as to that service, a servant of the party to whom he is loaned or hired, and to impose on the latter the usual liabilities of a master." 39 C.J. 1274; Missouri, K. & T. Ry. Co. v. McGlamory (Tex.Civ.App.) 34 S.W. 359, 361; Gulf, C. & S. F. Ry. Co. v. Shelton, 96 Tex. 301, 72 S.W. 165. In 39 C.J. 1270, § 1455, it is said: "If one knowingly and without objection receives the benefits of labor, or holds out to the public one as engaged in his service, he is liable as a master for the acts of the latter as his servant even though the servant was at the time of the negligence complained of in the general employment of another."

We think it is made to appear from the facts heretofore recited that the work in question was being done with the knowledge and consent and under the direction of the municipal officers who had authority to have the work done. Apparently McCown, the alderman, had authority from the city to arrange to have such work done, for on a previous occasion he had employed one Atwell to do the same repair job, but the latter had failed to do it properly. It is admitted that McCown and the mayor knew that the ditch was being cleaned and the walk repaired by the relief workers. Under the provisions of the Penal Code (Penal Code, art. 784), they could have prevented such interference with the streets, but, instead of doing so, they selected the foreman who was to have charge of the relief workers in doing the work in question, and they referred to him all requests for similar work throughout the city. They inspected the work being done by said workmen at the place in question a few hours prior to the accident. It is clear, therefore, that the defect in the crosswalk was caused by workmen who were performing work for the city, with the knowledge and consent and under the direction of the principal officer of the city, and therefore the municipality is liable for the damages proximately caused thereby. The trial court properly refused the motion for an instructed verdict.

■ Special issue No. 3 inquired whether or not there was any light, barricade, or other warning in the vicinity of the open ditch at the time of plaintiff's injury. Special issue No. 4 was as follows: "Do you find from a preponderance of the evidence that such failure, if any, to so place and maintain such light, barricade, or other warning, constituted negligence on the part of the defendant, its agents, servants, or employees, according to the definition of negligence given you in this charge?" To which the jury answered, "Yes."

Appellant objected to this issue in substance because the jury might take into consideration the negligence of some agent or servant other than those charged with the duty of supervising or protecting the streets against defects. It is a well-settled rule that a charge must be construed in the light of the pleadings and evidence. Dickinson v. Sanders (Tex.Civ.App.) 39 S.W.(2d) 102, par. 5, and authorities there cited; East Line & R. R. Ry. Co. v. Smith, 65 Tex. 167; Rosenthal, Meyer & Co. v. Middlebrook, 63 Tex. 333. The only agents or servants of the city referred to in the pleadings or evidence or otherwise mentioned in the record were the mayor, aldermen, and the relief workers who caused the defect. The city was responsible for the negligence of each of these agents and employees. Hence there was no occasion for the jury to be misled by the issue in question.

We have carefully considered all other assignments and find no reversible error.

The judgment of the trial court is affirmed.