## CITY OF AUSTIN V. SARAH DANIELS.

No. A-7315. Decided April 20, 1960.
Rehearing Overruled June 15, 1960.
(335 S.W. 2d Series 753)

*Doren R. Eskew,* City Attorney, *C. J. Taylor, Jr., Thomas R. Hunter,* Assistants City Attorney, for petitioner, City of Austin.

The Court of Civil Appeals erred in refusing to hold that the regulation of parking and traffic upon a public street is a governmental function, and in affirming the action of the trial court in submitting special issues as to whether the failure to place warning devices to pedestrians in the street was negligence. Parsons v. Texas City, 259 S.W. 2d 333; Stinnett v. City of Waco, 142 Texas 648, 180 S.W. 2d 433; City of Galveston v. Dazet, 19 S.W. 142.

*Will Cowan* and *Arthur Mitchell,* both of Austin, for respondent, Sarah Daniels.

MR. JUSTICE GREENHILL delivered the opinion of the Court.

Sarah Daniels brought this suit against the city alleging that she was injured when she slipped and fell on some wet paint in the street. The paint had been freshly put down by city employees to indicate the area for the parking of cars adjacent to the curb and a parking meter. The trial court entered judgment for Sarah Daniels based upon the jury's verdict. That judgment was affirmed by the Court of Civil Appeals. 322 S.W. 2d 384. We here affirm the judgments below.

The areas set aside for parking of automobiles were designated by painted lines. The lines had become worn. Under the direction of appropriate city employees, they had just been repainted. No devices, signs, or other methods of warning were used to call attention to the wet paint. While the paint was of a fast-drying variety, the testimony varied as to the length of

time it took to dry. The upper surface of the painted line dried first. This crust gave the line the appearance of the paint's being dry.

Sarah Daniels parked her car in one of the designated spaces. She got out of the left side of her car, away from the curb, and walked around to deposit a coin in the parking meter. In so doing, she slipped in the paint and injured herself. From her testimony and from the paint on her clothes, there is ample evidence to support the jury's finding that she did fall down in the wet paint.

The jury found that the acts of the city's employees in placing the paint on the street under the circumstances constituted negligence; that their acts created a dangerous condition in the street; that the dangerous condition was hidden and concealed from plaintiff, Sarah Daniels; that the placing of the paint on the street under all the circumstances rendered this portion of the street in a condition that was not reasonably safe and created a hazardous and unsafe condition on the street. Each of these acts was found to be negligence and a proximate cause of Sarah Daniels' injuries. The jury further found that the failure to place any warning signs or devices was also negligence and a proximate cause. The jury found that the incident was not an unavoidable accident and that Sarah Daniels was not contributorily negligent.

1,2 The law questions which arise from these circumstances are complicated and difficult. When acting in a governmental capacity, the city is not liable in damages for torts of its employees.[1] It is here conceded that regulation of traffic is generally held to be a governmental function and that the control of of parking has been held to be part of the regulation of traffic.[2]

On the other hand, the maintenance of streets is a proprietary function. Negligence in the performance of this function renders the city liable for resulting injuries. *City of Houston*

1.—City of Fort Worth v. George, 108 S.W. 2d 929 (writ refused, 1937) where plaintiff was injured when city garbage truck was driven into a fence by which she was standing.

2.—City of Abilene v. Woodlock, 282 S.W. 2d 736 (writ refused, 1955), where the city prohibited parking along a street, it was held that the regulation was a reasonable exercise of the police power. Harper v. City of Wichita Falls, 105 S.W. 2d 743 (writ refused, 1937), upholding the power of the city to install and operate parking meters as bearing a reasonable relationship to the regulation of traffic. See annotation 33 A.L.R. 2d 761: Installation or Operation of parking meters as within governmental immunity from tort liability.

*v. Shilling*, 150 Texas 387, 240 S.W. 2d 1010, 26 A.L.R. 2d 935 (1951); *City of Austin v. Schmedes*, 154 Texas 416, 279 S.W. 2d 326, 52 A.L.R. 680 (1955). And the city is under a duty to maintain the streets in a reasonably safe condition. This function has likewise been classified as proprietary. *City of Galveston v. Posnainsky*, 62 Texas 118 (1884).[3]

The problems here then are (1) is there evidence of negligence on the part of the city? That question will be discussed later herein. (2) Assuming ngligence, what is the law where the city has breached its duty to maintain the streets in a reasonably safe condition when the acts performed are also connected with the governmental function of regulating traffic? (3) Is there any evidence to support the jury's finding that the fall of Sarah Daniels caused the injuries for which she was awarded damages? This question will likewise be discussed later herein.

Some of the Texas cases in which cities have been held liable for negligence in failing to maintain streets or sidewalks in a reasonably safe condition have involved obstructions.[4] In others,

---

3.—In writing the Posnainsk opinion, Justice Stayton set out the basis for the distinction between governmental and proprietary functions, particularly as to streets:

When the municipal corporation is acting in a purely public character "forced upon it without its consent, simply because the state can thus, through such local agencies, more easily and effectively discharge duties essentially its own, it is but proper that no action should be maintained against it for the negligence * * * of its officers * * * ." 62 Texas at 125.

"It would seem that, in so far as municipal corporations * * * exercise powers conferred on them for purposes essentially public—purposes pertaining to the administration of general laws made to enforce the general policy of the state,—they should be deemed agencies of the state, and not subjct to be sued * * *; that, in reference to such matters, they should stand as does sovereignty, whose agents they are * * *.

"In so far, however, as they exercise powers not of this character, voluntarily assumed—powers intended for the private advantage and benefit of the locality and its inhabitants,—there seems to be no sufficient reason why they should be relieved from that liability to suit * * * to which an individual or private corporation * * * would be liable." 62 Texas 127. This last quoted paragraph is used by McQuillin as the law. 19 McQuillin on Municipal Corporations (3rd ed.) 190, section 53.23.

For the general proposition that a city is required to exercise ordinary or reasonable care to maintain its streets and sidewalks in a reasonably safe condition, see 63 C.J.S. 88 and 114, Municipal Corporations, sections 782 and 802; 19 McQuillin on Municipal Corporations 12 and 77, sections 55.02 and 54.17.

4.—E.g., a tree stump in an area outside of the traveled portion of the highway where it is not improbable that injury may occur. City of Waco v. Darnell, 35 S.W. 2d 134 (Texas Comm. App., 1931); leaving a pile of dirt at the end of plaintiff's sidewalk. Shuford v. City of Dallas, 144 Texas 342, 190 S.W. 2d 721 (1945).

the cities have been held liable for their negligence in leaving holes or unguarded openings in streets or sidewalks.[5]

In other jurisdictions cities have been held liable for allowing ice and snow to remain on the streets and sidewalks, assuming negligence under all the facts and circumstances.[6]

In *City of Waco v. Diamond,* Texas Com. App., 65 S.W. 2d 272 (1933), the plaintiff slipped on ice after getting off a streetcar. The Texas Commission of Appeals recognized a duty to keep the streets in a reasonably safe condition but reversed the case because, under all the facts and circumstances (an unprecedented freeze and a 15-inch snow) there was no evidence of negligence on the part of the city.

And in *Dlgado v. Town of Billerica,* 323 Mass. 483, 82 N.E. 2d 591, 1948, the city was held liable for injuries caused when the car in which plaintiff was riding slipped in oil freshly applied to a street where no sign or other warning was given of the unsafe condition in the street.[7]

From these cases dealing with the proprietary function, we turn to those dealing with the regulation of traffic which have been held to be governmental. Where signal lights were out of order, i.e., traffic from all four directions got a green light and a collision resulted, liability of the city has been denied.[8] Similarly, the cities have been absolved of liability for negligence in failing to install a central switch to operate all traffic signals in the paths of fire or police vehicles making emergency runs.[9]

5.—E.g., injuries received when the plaintiff's minor daughter fell into an unguarded drain or gutter next to the sidewalk. City of Galveston v. Posnainsky, 62 Texas 118 (1884); where plaintiff fell into an unguarded and open culvert in the street. Gabbert v. City of Brownwood, 176 S.W. 2d 344 (writ refused, 1943); where plaintiff broke her ankle stepping in a hole in the street. City of Beaumont v. Baker, 95 S.W. 2d 1365 (writ dismissed, 1936); and where plaintiff was injured where city employees negligently failed to replace a slab over a ditch. City of Grandview v. Ingle, 90 S.W. 2d 855 (writ dismissed, 1936).

6.—"A municipal corporation may be liable for injuries incurred as a result of its failure to use the care required of it in connection with water, snow, and ice on its streets and sidewalks, except to the extent that statutes exempt it from liability." 63 C.J.S. 140, Municipal Corporations, section 811. See Annotation 39 A.L.R. 2d 782, at 787 and 788.

7.—There is a statute involved in the Delgado case (G. L. (Ter. Ed.) c. 84, section 15) but it announces the common law on this subject as followed in Texas.

8.—Parson v. Texas City, 259 S.W. 2d 333 (writ refused, 1953). That opinion does not discuss the duty to maintain streets. It rejects plaintiff's theory of nuisance because there was no invasion of property rights and because the signals themselves were not inherently dangerous. To the same effect is Burchett v. City of Stanton, 262 S.W. 2d 952 (no writ, 1953).

9.—Baker v. City of Waco, 129 S.W. 2d 499 (no writ, 1939), collision with a police car; Presley v. City of Odessa, 263 S.W. 2d 293 (no writ, 1952) where plaintiff collided with a firetruck which ran a red light.

*Johnson v. City of Jackson,* 194 Tenn. 20, 1952, 250 S.W. 2d 1, 33 A.L.R. 2d 756, involved a combination of two governmental functions and liability was denied. There a policeman, riding a motorcycle and checking parking meters, ran over the plaintiff. The city's demurrer was sustained.

Each of these cases involved the direction of traffic and the use of the street for a governmental function, and did not involve the condition of the street itself.

There have been a number of cases where use of the street for a governmental purpose has combined with the proprietary function of properly maintaining the streets. In *City of Port Arthur v. Wallace,* 141 Texas 201, 171 S.W. 2d 480 (1943), a firetruck swerved out of its path because of holes in the street and struck the plaintiff. The court recognized that the city acted in a governmental capacity in operating the firetruck and in a proprietary capacity in failing to maintain the streets in a reasonably safe condition. It was held that where the defect in the street combines with other causes to produce the injury, the city was liable.[10]

The *Port Arthur-Wallace* case cited with approval, among others, two cases. The first is *City of Austin v. Schlegel,* (Texas Comm. App., 1924) 257 S.W. 238. There a firetruck, on its way to a fire, slowed down to pick up a civilian volunteer. He got bumped off the truck when it hit a hole in the street. The city was held liable. The second case was *Kling v. City of Austin,* 62 S.W. 2d 689 (no writ, 1933). There the city allowed a fire hydrant to remain in a driveway to a filling station. It was struck by plaintiff's car at night. Judge McClendon there wrote:

"The precise question here is whether breach of this duty [to maintain streets] is rendered nonactionable where the unsafe condition is caused by either the improper location of a governmental function instrumentality or the failure to properly guard such instrumentality so as to render it reasonably safe."[11]

---

10.—The Port Arthur-Wallace opinion is followed in City of Houston v. Wolverton, 154 Texas 325, 277 S.W. 2d 101 (1955). There a city employee operated a city car on a governmental task, checking milk and dairies. At the time of the accident, however, he had finished with his checking and was on his way to a city garage to get the car inspected and repaired, a proprietary function under City of Houston v. Shilling, supra. It was held that the city was liable.

11.—The above language from the Kling case is quoted in this Court's opinion in Crow v. City of San Antonio, 157 Texas 250, 301 S.W. 2d 628, at 630 (1957) which follows the Kling case.

It was held in the *Kling* case that "the duty to maintain the reasonable safety of the streets would impose the obligation" to use reasonable means to guard against the hazard. The city was held liable.[12]

The governmental function of traffic regulation and the proprietary function of maintenance of the streets also merged in *Crow v. City of San Antonio*, 157 Texas 250, 301 S.W. 2d 628 (1957). There, to protect school children crossing a street, a fireman had stretched a rope across a street. Its function was to direct traffic away from the school crossing. The plaintiff, riding a motorcycle, failed to see the rope and was injured. The Court of Civil Appeals held that the rope had nothing to do with maintenance of the streets; that it was there in the governmental function of regulating traffic. 294 S.W. 2d 899. This Court reversed and rendered the judgment of the Court of Civil Appeals. Citing the cases above set out, it was held that the city owed the duty to maintain its streets in a reasonably safe condition for travel, and that the duty existed even though the city was at the same time exercising a governmental function.[13]

The case nearest in point, from the standpoint of physical facts, is that of *Cleary v. City of New York*, 47 N.Y.S. 2d 456 (1944).[14] There, as here, the plaintiff slipped in wet paint put down on a traffic lane. The jury found that the city was negligent and absolved the plaintiff of contributory negligence. It was held that while the regulation of traffic was governmental, the city nevertheless owed the duty to maintain the surface of the street in a reasonably safe condition. The court distinguished a New York case in which a collision occurred when the city, exercising a governmental function, negligently allowed traffic lights to show green in all four directions.

This is the first case in this Court dealing with a slippery substance deliberately put upon the surface of a street by a city.

---

12.—Cited in the Kling case is City of Augusta v. Cleveland, 148 Ga. 734, 98 SE 345, where the plaintiff fell into an open hole in a sidewalk leading to a sanitary sewer. Conceding that the sewer system was governmental, the city nevertheless owed the duty to maintain the sidewalks in a reasonably safe condition.

13.—The dissent in the Crow case points up these considerations: the holding is not based on nuisance; it is not based on any obstacle in the street itself; and the rope had nothing to do with repairing the street.

14.—The decision of this lower court of New York is, of course, not binding on on this court, but its reasoning is persuasive. New York has a statute on the general subject applicable to the state eliminating governmental immunity, but the opinion neither mentions nor relies on it as being applicable to cities. Ct. of Claims Act, sections 8 and 12 a. The reasoning of the opinion is independent of the statute. The same reasoning and result is reached in Kamnitzer v. City of New York, 265 App. Div. 436, 40 N.Y.S. 2d 139, where plaintiff ran into a traffic signal pole which was bent and extended out into the traveled portion of a street.

Nevertheless, if negligence is proved, the defect or hazard created may be just as serious a condition as an obstacle, a hole, or a rope stretched across the street. It certainly may be as dangerous as ice negligently allowed to remain on the street, liability for which follows in many states. If the firetrucks in the *Port Arthur-Wallace* or the *Austin-Schlegel* cases had skidded off their course in fresh oil or paint placed in the street in a negligent manner by the city instead of by a hole in the street, would the result have been different?

**3** We think the facts here bring the case within the rule stated in 25 American Jurisprudence 651:

"The rule which is supported by the weight of authority and seems to be more consistent with fundamental principles is that public liability for injuries resulting from defective streets or other public ways may be predicated upon unsafe conditions resulting from acts done by public officers in the exercise of the police power or in the performance of governmental duties where the responsible * * * authorities are chargeable with negligence * * * ." 25 Am. Jur. 651, section 358.

We hold that the courts below correctly held that the city was not immune from suit and liability under the facts and circumstances of this case, asuuming negligence.

**4** We turn now to the question of negligence on the part of the city. The jury found that the act of the employees in placing paint on the street under the circumstances and at the time and place in question was negligence. There is no assignment of error here that there is no evidence to support this finding of the jury. The jury further found that the acts of the city employees in putting wet paint upon the street under all the circumstances created a hazardous and unsafe condition upon the street, and that such acts constituted negligence. There is no assignment of error here that there was no evidence to support these findings.

The city does have assignments of error that there was no evidence to support the findings of the jury that the city was negligent in failing to place signs or devices warning of the wet paint. In that regard, the city's employee, Dunham, testified that the paint began to dry from the outside and a crust formed on top of it. An inexperienced person could not tell whether the paint was wet or dry. The foreman of the painting crew testified that the city did use barricades, flares, or cones when painting stripes in the center of the street, at stop lights,

and crosswalks. These were placed there to protect the paint *and to warn people of a wet, slippery condition.* The paint was slippery when applied. He said a person would slip on it if he "wouldn't watch." The city had signs which could be hung on the parking meters to warn of fresh paint, but they were not used here. The city argues that to place cones in the street would create a hazard as well as warn of one. Certainly the hazard resulting from the use of cones to warn of freshly painted parking lines would be no greater than that caused by their use in other places in the street. It would be for the jury to decide whether ordinary care required their use. We think there was some evidence to support the jury's finding of failure to warn.

5   The city's fourth point is that the trial court erred in submitting the issue to the jury regarding the creation of a dangerous condition in the street because the condition "was too trivial for minds of reasonable men to differ" upon whether it could be foreseen that an accident would occur. The city made no such objection to the issue in the trial court. The point was not made in its motion for summary judgment, in its motion for judgment notwithstanding the verdict, or in its motion for new trial. There was no motion for an instructed verdict. The point was raised for the first time by amendment to its brief in the Court of Civil Appeals after the opinion in *City of San Antonio v. Chabot,* 318 S.W. 2d 485, Texas Civ. App., 1958, writ refused, no reversible error. The question was therefore not preserved. Texas R. Civ. P., Rule 374.

6   The city contends that there is no evidence to sustain the finding of the jury that Sarah Daniels was injured by the fall or that her injuries were caused by the fall. In addition to her testimony of bleeding, pain in the back and pelvic area, and a loss of earnings, Dr. Todaro testified that the fall in question caused her vaginal bleeding and bruises, and that her disability, resulting from the bone injury and sprains caused by her fall, will continue in the future. Other facts concerning her injury and condition are set out in the opinion of the Court of Civil Appeals, 322 S.W. 2d at 389. The point is overruled.

7   Finally, the city contends that the jury's award of $5,000 was excessive as a matter of law. There is no contention that the courts below used the wrong measure of damages or legal test to determine excessiveness. No question of remittitur is involved. We therefore are without jurisdiction to pass upon the point. *Port Terminal Ry. Ass'n v. Ross,* 155 Texas 447, 289 S.W. 2d 220, at 226 (1956) ; *Beaumont, S.L. & W. Ry. v. Schmidt,* 123 Texas 580, 72 S.W. 2d 899 (1934).

The judgments of the courts below are affirmed.

Opinion delivered April 20, 1960.

MR. JUSTICE NORVELL, joined by JUSTICES GRIFFIN, CULVER and HAMILTON, dissenting.

The respondent, Sarah Daniels, was injured when she fell as a result of stepping upon fresh paint which the employees of the City of Austin had placed upon the surface of a street in order to mark a parking space adjacent to a parking meter. A serious question is urged as to the evidential support of the jury's findings, but regardless of whether the city's employees were negligent in using a particular type of paint, or in the methods employed by them in applying the paint, or in failing to give proper warning of the presence of the paint upon the street, the city should not be held liable for the injuries sustained by respondent because the city in maintaining parking meters and incidental parking spaces marked off by painted lines upon the surface of the street was acting in a governmental as distinguished from a proprietary capacity and hence was immune from tort liability. City of Galveston v. Posnainsky, 62 Texas 118. The classic example of a municipality's acting in a governmental capacity is the enactment and enforcement of a police regulation. In 1937, when parking meters were something of a novelty, the Fort Worth Court of Civil Appeals in Harper v. City of Wichita Falls, 105 S.W. 2d 743, decided that the erection and maintenance of parking meters upon city streets was an exercise of the police power. This Court refused a writ of error in the case and it is of interest to note that the ordinance there upheld contained provisions for "the designation of spaces for parking of vehicles and for the installation and operation of parking meters, *such spaces to be indicated by painted lines upon the surface of the street* within the parking meter zone; the parking meters to be placed upon the curb adjacent to and alongside of the individually marked spaces to be identified, and with signal devises indicating whether or not the parking space is then in use." 105 S.W. 2d 746.

The above paragraph states the controlling facts and the law which to my mind should control the disposition of this case. I would reverse the judgments of the trial court and the Court of Civil Appeals and render judgment for the City of Austin.

However to the Court of Civil Appeals and a majority of this Court, the record does not present a simple case of injury

resulting from the exercise of a city's governmental powers. On the contrary the city is held liable to respondent for her injury in rather complicated opinions containing many pages. As I understand the Court of Civil Appeals opinion, its primary holding is based upon the theory of nuisance, — that the jury in effect found "that the placing of the paint in the manner that it was put down created a nuisance."

The respondent in her reply brief argues that the city's employees in painting the parking lines along the street were performing a proprietary rather than a governmental function.

This Court accepted neither of these theories as a basis of its decision and I shall notice them only incidentally and say simply that in my opinion this is not a nuisance case and that the city's employees in painting parking lines along the street were carrying out a governmental rather than a proprietary function. According to the majority opinion, the decision to affirm the judgments of the courts below is based upon the theory that the City breached its duty to keep its streets in a reasonably safe condition. While this theory is easily stated and undoubtedly is one of general application, its attempted application to the facts of this case raises formidable difficulties. These, I would discuss.

Under the thesis adopted by the Court, the single act — marking parking spaces upon the surface of the street—constitutes both the exercise of a governmental function with consequent immunity from liability, and the breach of a proprietary duty which renders the city liable in damages. Could it not with equal logic be said that the negligent parking of a fire truck in the street while firemen made use of the same in putting out a fire in Mr. Brown's house, would render the city liable to Mr. Brown in damages when upon rushing to his fire-threatened house, he collided with the fire truck which blocked the street and rendered the same unsafe for use by the travelling public? We seemingly have the law granting immunity and at the same time taking immunity away. This cannot be a sound legal proposition. Parking meters are located upon sidewalks and lines marking parking spaces are placed upon streets, and the result of the rule accepted by this Court is to destroy the municipal immunity usually attendant upon governmental activities contrary to long-established public policy.

It is not my purpose to debate the wisdom of this policy in modern times and under present-day conditions, other than to

say that the policy exists and that the doctrine of governmental immunity has been repeatedly recognized by the courts of this state.[1] If the doctrine is to no longer obtain, it should be repudiated outright, preferably, in view of our judicial precedents, by legislative or constitutional action, rather than be destroyed piecemeal by repeated judicial nibblings.

There are some rather apparent distinctions between the authorities relied upon by the Court to support its order of affirmance which may be alluded to briefly. First, this is not a case wherein the city's servants were engaged in carrying out a proprietary function and negligently failed to make proper repairs to the street. Secondly, this is not a case involving unrepaired holes in the street or breaks in paving surfaces. Thirdly, this is not a case of obstructions erected and left remaining in the street for some considerable period of time. In order to make applicable certain authorities cited in the majority opinion, it is necessary to ignore their logical basis which is the presence of some element over and above mere negligence, and reduce days and hours to minutes and seconds. I would again emphasize that, in essence, this is a case in which the very act,—painting stripes upon the street in pursuance of a governmental function is held to be a breach of proprietary duty to maintain a safe street. In City of Port Arthur v. Wallace, 141 Texas 201, 171 S.W. 2d 480, the chugholes in the street were not placed therein by the city in the exercise of a governmental function. In Kling v. City of Austin, Texas Civ. App., 62 S.W. 2d 689, an obstruction was erected and left standing in a driveway in violation of a duty to maintain safe and useable traffic ways. The obstruction was a fire plug and the furnishing of fire protection is a governmental function. However, this case can easily be reconciled with authoritative expressions of the law relating to the doctrine of nuisance. More than mere negligence was in-

---

1.—City of Galveston v. Posnainsky, 62 Texas 118, Article 6701-d, sections 13, 15, 16, 18 and 27, Vernon's Ann. Texas Stats., Harper v. City of Wichita Falls, Texas Civ. App., 105 S.W. 2d 743, wr. ref., Parson v. Texas City, Texas Civ. App., 259 S.W. 2d 333, wr. ref., Baker v. City of Waco, Texas Civ. App., 129 S.W. 2d 499, no writ hist., 18 McQuillin, Municipal Corporations, section 53.24 wherein it is said that, "The doctrine exempting a municipal corporation from private action for torts resulting from the performance of its governmental functions, steadily adhered to by the most recent judicial decisions, as above indicated, is based on the familiar reason that the undertaking is not to promote the private interests of the municipality as a corporate entity, but rather for the public benefit, and in the performance of such obligation the municipality is a mere public agent, either of the state or of the local community. The reason, as often expressed, is one of public policy, to protect public funds and public property. 'Taxes are raised for certain specific governmental purposes; and, if they could be diverted to the payment of the damage claims, the more important work of government, which every municipality must perform regardless of its other relations, would be seriously impaired if not totally destroyed * * *.'"

volved, but a dangerous and persisting situation was created by an affirmative act of the servants of the city and no measures were taken to correct the condition. To return to the fire truck illustration: Had firemen in the course of fighting a fire gouged out holes in the pavement of the street which were left unfilled and unrepaired to someone's subsequent injury, municipal liability could probably be predicated upon the failure to remedy a dangerous situation as was the case in Kling v. Austin. Crow v. City of San Antonio, 157 Texas 250, 301 S.W. 2d 628, a street obstruction case, presents a similar situation. None of the Texas cases cited by the Court support the proposition that municipal immunity disappears when the governmental action taken renders a small portion of a city street slipper for a brief period of time.[2] The Court says that, "This is the first case in this Court dealing with a slippery substance deliberately put upon the surface of a street by a city." The word "deliberately" was evidently deliberately used to fend off future asserted liability because of oil and grease from police cars, fire trucks and garbage conveyances dripping or dropping upon the city's streets, rendering them slick and slippery. But, logically, can a distinction be drawn between paint deliberately applied with a paint brush and lubricating oil or grease which flows onto the street from a carelessly serviced police car?

There is something to be said for clarity in the law and recognizable demarcations of liability. Extensions of legal doctrines by judicial construction often bringing uncertainty and confusion in their wake. While I recognize the majority opinion as a closely reasoned and ably written legal pronouncement, I nevertheless feel that it constitutes a departure from the law of this state with reference to municipal tort immunity for governmental actions. While City of Houston v. Shilling, 150 Texas 387, 397, 240 S.W. 2d 1010, 1016, 26 L.R.A. 2d 935, presented a somewhat different factual situation from the case now before us, I feel that the warning contained in Mr. Justice Smedley's dissent is applicable here:

2.—Counsel for both sides are to be commended for their diligence in research. The respondent has produced an opinion written by a trial judge of the City Court of the City of New York, County of Bronx, overruling a motion to set aside a jury verdict. Cleary v. City of New York, 47 N.Y.S. 2d 456. This opinion supports respondent's position and may well be the only one in existence which does so. The petitioner in turn cites Bernardine v. City of New York, 294 N.Y. 361, 62 N.E. 2d 604, 161 A.L.R. 364, by the Court of Appeals to show that municipal immunity has been waived by statute in the State of New York and the decision in Cleary could have well been based upon this waiver. However, much of this argument as to New York law is beside the point. To my mind the Cleary decision is not persuasive. If the doctrine of municipal immunity for governmental acts is to be limited or abandoned, the New York example of legislative action may well be considered.

"This Court should remember what was said by it in City of Port Arthur v. Wallace, 141 Texas 201, 204, 171 S.W. 2d 480, 481. There the Court, referring to the rule as to liability of the city for negligence in discharging its proprietary functions and the rule as to nonliability for negligence in discharging its governmental functions, said: 'the rule of liability in one function and non-liability in the other is so well established in this State that, if change is to be made, it should be made by the legislature and not by the courts.'

"The function, whether governmental or proprietary, includes and should be held to include, all of the elements or parts of the function. Unless it is so held there will no longer be a well defined distinction between governmental and proprietary functions. The principal vice in the decision of the majority is that it opens the way to the destruction of a long established principle of law by taking apart heretofore well settled governmental functions and seeking to find in some part something that may seem to be proprietary in nature."

I respectfully dissent.

Opinion delivered April 20, 1960.