**CITY OF SAN ANTONIO, Appellant,**

**v.**

**Donato RAMUNDO, Appellee.**

**No. 14498.**

Court of Civil Appeals of Texas.

San Antonio.

Dec. 30, 1966.

Second Motion for Rehearing Denied
Jan. 25, 1967.

Lang, Byrd, Cross, Ladon & Oppenheimer, Bernard Ladon, San Antonio, for appellant.

Stahl & Sohn, San Antonio, for appellee.

CADENA, Justice.

On Motion for Rehearing.

The opinion handed down in this case on November 23, 1966, is withdrawn and the following is substituted therefor.

This is a personal injury case in which the City of San Antonio appeals from a judgment, based on a jury verdict, rendered against it in the amount of $18,750.00, in favor of plaintiff, Donato Ramundo. It is undisputed that plaintiff was injured while he was a passenger on a bus operated by the City as a part of its transit system.

City contends that plaintiff is precluded from recovering because of the variance between the factual statements contained in the notice of injury which he filed with the City and the facts, upon which the judgment is based, as found by the jury.

Section 150 of the Charter of the City of San Antonio exempts the City from liability for personal injuries unless the injured person, within ninety days after the injury, gives written notice to designated city officials stating, among other things, "when, where and how" the injury occurred. Plaintiff timely filed a written notice stating that on May 11, 1964, while he was a passenger on a City bus, he was injured as a result of being "caused to fall in said bus when the driver started and then negligently and suddenly stopped the bus."

In both his original petition and his amended petition plaintiff, without mentioning negligent conduct on the part of any other person, attributed his injuries to the negligence of the operator of the bus. His amended petition specifically charged nine separate acts or omissions on the part of the bus driver which were alleged to constitute negligent conduct.

In its amended answer the City contended that a City policeman who was operating his motorcycle in front of the bus stopped his vehicle suddenly, without giving any indication of his intention to do so, thereby causing the bus driver to bring the bus to a sudden stop.[1] In answer to City's amended answer, plaintiff filed a

---

1. In its original answer the City alleged that the bus operator was forced to make an emergency stop when a vehicle operated by an unknown driver suddenly "cut" in front of the bus.

supplemental petition in which, after denying generally the allegations in the City's amended answer, he asserted that if "in fact" there was a motorcycle in front of the bus, the bus driver was negligent in failing to keep a proper lookout and in not having the bus under such control as would permit him to bring it to a smooth and safe stop in the event a vehicle in front of the bus stopped suddenly. He further alleged that the emergency, if any, which confronted the bus driver was the result of the bus driver's negligence.

The jury's verdict absolved the bus driver of all negligence. However, in answer to special issues submitted at the request of the City, the jury found that a City policeman had stopped his motorcycle suddenly in front of the bus without giving any warning of his intention to do so, and that this act of the policeman was the sole proximate cause of plaintiff's injury. The judgment in favor of plaintiff is, thus, necessarily based on the jury findings relating to the conduct of the policeman rather than on the alleged negligence of the bus driver to which plaintiff attributed his injuries in his notice of claim.

The purpose of notice provisions such as the one before us "is to advise the municipality in what the negligence consists and give it an opportunity to investigate * * *, thereby enabling it to better guard against fraudulent and unfounded claims and to settle the claim and avoid litigation, or to prepare for trial if it decides not to make settlement." City of Waco v. Landingham, 158 S.W.2d 79, 80 (Tex.Civ.App., 1940, writ ref'd).

■ The problem of determining whether a variance between the statements in the notice of injury and the proof adduced at the trial will bar plaintiff's recovery is, essentially, a question of the degree of inconsistency between the matters alleged in the notice and those proved. If the discrepancy is such as to mislead or tend to mislead municipal officials in investigating the claim and preparing for trial, the variance is fatal. In such a case the City has not been given the information required to serve the purpose of the notice provision and should not be called upon to defend a different cause of action than that which it prepared to defend on the basis of the facts alleged in the notice. Anno: 52 A.L.R.2d 966, 975 (1957).

■ The variance here was of such a nature that to uphold the judgment would defeat the purpose of the notice requirement. The notice alerted the City to a claim based on the negligence of a municipal employee engaged in the performance of a proprietary function. The judgment in favor of plaintiff is based on the conduct of a member of the police department. As plaintiff points out in his brief, the City failed to plead the doctrine of municipal immunity from liability for injuries resulting from the negligence of an employee engaged in the performance of a governmental function.[2] Further, as plaintiff points out in his brief, the City introduced no evidence tending to show that, at the time of the accident, the policeman in question was engaged in the performance of duties of a purely governmental character. The production of such evidence was essential to the successful interposition of the defense of governmental immunity. The fact that a person is employed as a member of a municipal department which performs governmental functions is not of itself determinative of the question of liability of the City where, as here, the record affirmatively reflects that members of such department also perform proprietary duties. 40 Tex.Jur.2d, Municipal Corporations, § 619, p. 305; City of Meridian v. Beeman, 175 Miss. 527, 166 So. 757.

Despite the renunciation of the doctrine of governmental immunity by the courts of

---

2. The trial court refused to permit the City, at the conclusion of the evidence, to amend its pleadings so as to incorporate the defense of governmental immunity.

several other jurisdictions, our Supreme Court has not, as yet, expressly abandoned the rule. True, there have been successful flanking attacks upon the doctrine in such cases as Crow v. City of San Antonio, 157 Tex. 250, 301 S.W.2d 628 (1957); City of Austin v. Daniels, 160 Tex. 628, 335 S.W.2d 753, 81 A.L.R.2d 1180 (1960); and Dancer v. City of Houston, 384 S.W.2d 340 (Tex.Sup.1964). But, to date, the citadel has withstood all frontal assaults. Because, perhaps, of the statement by the Supreme Court in City of Austin v. Daniels, supra, to the effect that a city, "When acting in a governmental capacity * * * is not liable in damages for torts of its employees" (335 S.W.2d at p. 754), Texas city attorneys have evidenced no reluctance to rely on the defense of governmental immunity. Nor have our Courts of Civil Appeals hesitated to uphold such defense. Mayes v. City of Wichita Falls, 403 S.W.2d 852 (Tex.Civ.App., 1966, writ ref'd n. r. e.); Bean v. City of Monahans, 403 S.W.2d 155 (Tex.Civ.App., 1966, writ ref'd n. r. e.); Luvaul v. City of Eagle Pass, 408 S.W.2d 149, Tex.Civ.App., Corpus Christi, Oct. 27, 1966, (application for writ of error pending).

It must be assumed, then, that a Texas municipal attorney, when confronted with a claim based on the asserted negligence of a city policeman, would not, in protecting the interests of his client, ignore the defense of governmental immunity. The City's failure to plead such defense in this case, as well as its failure to come forward with the proof necessary to support it, is not surprising in view of the fact that plaintiff's notice, as well as his pleadings, asserted a claim not subject to such defense. Plaintiff now seeks to recover on a cause of action which the City, relying on his notice, was not prepared to, and did not, defend. Under these circumstances, the variance must be held to be fatal.

The closest Texas case in point, although it does not involve the nebulous distinction between governmental and proprietary functions, is City of Waco v. Landingham, supra. There the notice stated that plaintiff's injury was due to the action of a city employee in, suddenly and without warning, putting in motion a truck from which plaintiff was attempting to alight. Plaintiff's petition attributed his injury to the negligence of the city in furnishing to the crew a truck with defective brakes, so that, when plaintiff attempted to alight from the truck which had been brought to a complete stop, the vehicle started moving down an incline without having been put in motion by anyone, causing plaintiff to miss his footing and fall. The proof offered by by plaintiff supported the allegations in his petition, and was not in accordance with the facts set out in the notice. The Waco Court of Civil Appeals held that the discrepancy between the facts set out in the notice and the facts proved at the trial was such as to defeat the purpose of the notice requirement, and that such variance was, therefore, fatal.

Plaintiff insists that the Landingham case is inapplicable because the charter provision there involved required that the notice state the "circumstances" under which the injury occurred and the "conditions causing same," while the San Antonio Charter merely requires a statement of "when, where and how" the injury occurred. Relying on such cases as City of Abilene v. Fillmon, 342 S.W.2d 227 (Tex. Civ.App., 1961, writ ref'd n. r. e.), and City of Houston v. Watson, 376 S.W.2d 23 (Tex.Civ.App., 1964, writ ref'd n. r. e.), plaintiff contends that a requirement that the notice state "how" the injury occurred does not require a statement of the "cause" of the injury.

Insofar as here pertinent, the word "how" means "in what manner or way, by what means or process; from what reason; from what cause." Webster's International Dictionary (2d Unabridged ed., 1959). As used in notice provisions, the word "how," if it is to serve the purpose of the notice requirements, must be intended to require a statement of a means or cause for which the municipality might be held

responsible. Thus, in Stoors v. City of Denver, 19 Colo.App. 159, 73 P. 1094, where the applicable provisions required a statement of "when, where and how" the injury occurred, a notice stating that plaintiff slipped and fell on a public way was held defective for failure to state "how" (i. e., through what defect in the way) the injury occurred.

■ We agree that, as stated in City of Houston v. Watson, supra, notice provisions do not "require the injured party to state the acts and omissions of negligence he expects to rely on in court with the same particularity and meticulosity that may be required in pleadings." 376 S.W. 2d at p. 29. Nor do we hold, since such a holding is not required, that plaintiff here was required to specify the facts and circumstances on which he relied in asserting that the driver's act in suddenly stopping the bus constituted negligence. The holding in Watson was merely that the statement in the notice describing the cause of the accident as the negligent failure of the city to maintain a street in a safe condition for travel was broad enough, in its context, to include a failure to make reasonable inspection. A holding to the effect that the description of the cause of an injury is sufficient cannot be easily expanded into a holding that the notice need not state the cause of the accident. There is nothing in the Watson opinion to indicate that a statement attributing an injury to the defendant's negligence in maintaining a street would support a recovery based on the negligent operation of a garbage truck.

Nor does City of Abilene v. Fillmon, supra, support plaintiff's contention. The Court there, as we are here, was concerned with the question of compliance with a "when, where and how" notice provision. The opinion in that case clearly supports the view that, under such a provision, it is necessary for claimant to describe the cause of injury. This necessity, said the Court, arose "by reason of the requirement for a statement of 'how the injury occur-

red'." 342 S.W.2d at p. 229. Such language cannot serve as authority in support of the contention that a notice requirement such as that before us does not contemplate a statement of the cause of the injury.

■ Our holding is, of course, limited to the facts of the case before us, in which the record reflects a variance of such a nature that plaintiff is now seeking to support a judgment based on a cause of action to which a particular defense might have been successfully interposed had the municipality been reasonably alerted to the nature of plaintiff's claim, while the notice to the City described a claim based on facts setting forth a cause of action to which the omitted defense was not applicable.

■ Plaintiff's first four cross-points, asserting that the findings of the jury absolving the bus driver of negligence are contrary to the great weight and preponderance of the evidence, are without merit and are overruled.

Plaintiff's request for additional findings is denied, since this opinion states the reasons why the judgment below is reversed, and the findings requested by plaintiff are not necessary in order to obtain a full review of our holding upon application for writ of error.

Plaintiff's motion for rehearing is overruled. The judgment of the trial court is reversed and judgment is here rendered that plaintiff take nothing.

MURRAY, Chief Justice (dissenting).

The majority have reversed and rendered the judgment of the trial court because the notice of injury furnished the City in an attempt to comply with Section 150 of the Charter of San Antonio was fatally defective.

Section 150 of the Charter of the City of San Antonio reads in part as follows:

"LIABILITY OF THE CITY AND LIMITATIONS THEREON. Before

the City shall be liable for damages for the death or personal injuries of any person * * *, the person injured, * * * shall give the City Manager or the City Clerk notice in writing of such * * * injury * * * within ninety days after same has been sustained, stating in such written notice when, where and how the * * * injury * * * occurred, * *."

Appellee was injured on May 11, 1964, while a passenger on a bus operated by the City of San Antonio as a common carrier of passengers, and thereafter on July 22, 1964, appellee notified the City Manager and City Clerk of San Antonio in writing as follows:

"On May 11, 1964, Donato Ramundo was a passenger on one of the buses operated by the Transit Board of Trustees of San Antonio and the City of San Antonio. At about 7:30 A.M., at about the intersection of West Martin and North St. Mary's Street, in the City of San Antonio, Mr. Ramundo was caused to fall in said bus when the driver started and then negligently and suddenly stopped the bus.

"In accordance with Section 150 of the Charter of the City of San Antonio we, as representatives of and attorneys for Mr. Ramundo, hereby give notice of said accident and injuries sustained by Mr. Ramundo.

"As a result of such accident, Mr. Ramundo sustained injuries to his head, back, right arm, leg and hand, neck and a compression fracture of T-12 vertebra. Mr. Ramundo is still under the care of his doctors and the full extent of his injuries and disabilities have not yet been determined. The best estimate that can be made at this time is that he has been damaged in excess of $10,000.00."

On July 22, 1965, appellant filed its "FIRST AMENDED ORIGINAL ANSWER" containing the following allegations:

" * * * That when the traffic signal turned to green, a '3-wheeler' motorcycle of the type commonly used by the City of San Antonio Police Department and being driven by a City of San Antonio Policeman *in the regular course of his duties* started its forward movement and Mr. Harvey simultaneously started the forward movement of his bus. That at that time Mr. Ramundo was standing up in the aisle of the bus even though he did not intend to alight from the bus until it reached the next block. That for some reason unknown to the defendant, the policeman brought his motorcycle to a sudden and unexpected stop *without giving any sign or signal of his intention so to do,* creating an emergency, and causing Mr. Harvey to mash down on the brakes of his bus bringing the same to a sudden stop. That in so doing, Mr. Ramundo was thrown to the floor of the bus and another passenger, who had just gotten on the bus at Martin Street, was also thrown to the floor. * * *

"This defendant says that the action of the motorcycle policeman in bringing his motorcycle to a sudden stop *without any type of signal or warning,* causing the operator of the bus to quickly step on his brakes and bring the bus to a sudden stop was the sole proximate cause of the accident in question." (Emphases mine.)

Appellee's first witness was Arnold Harvey, who was the driver of the bus on the occasion in question, and his testimony was in support of the above allegations.

The jury found, among other things, that the policeman driving the three-wheeler motorcycle was proceeding in a southerly direction on St. Mary's Street in front of the bus, and that the policeman suddenly stopped the motorcycle without signaling his intention to do so and this act was the sole proximate cause of the accident.

The majority have held that the notice given to appellant by appellee was fatally defective because it alleged that the accident was caused by the negligence of the bus driver in suddenly stopping the bus when, according to the verdict of the jury, the

accident was caused by the sudden stopping by a policeman of his motorcycle in front of the bus, thus forcing the bus driver to mash his brakes and suddenly stop the bus.

The City does not deny that the bus was suddenly stopped and that appellee was thrown to the floor of the bus and injured, but does contend that the bus driver was not negligent as he was forced to make the sudden stop in order to prevent hitting the policeman and his motorcycle.

Appellee denied that there was a policeman in front of the bus which caused the sudden stop, but the jury believed the City's bus driver who was seated high up in the front of the bus and in a much better position to see what was happening, and especially was this so after appellee had been thrown to the floor of the bus. The report of the bus driver shows that immediately after the accident he secured nine courtesy cards from people on the bus. This information is not furnished to the injured passenger. Ex parte Ladon, 160 Tex. 7, 325 S.W.2d 121. In fact, the entire record shows that the City, through its employees, was in a much better position to know how the accident happened than was appellee who was thrown to the floor of the bus and injured.

In my opinion the written notice furnished the City by appellee fully met the requirements of Section 150 of the City Charter. There is no question but that notice was given as to "where" and "when" the accident occurred, but the City contends it did not meet the requirement as to "how" it occurred. I think it does; it states in effect that the bus driver suddenly stopped the bus and caused Ramundo to fall to the floor. This is *how* the accident happened. The fact that the City was able to prove on the trial that it was not the negligence of the bus driver, but the negligence of another employee, that caused the accident is not sufficient to show a variance rendering the notice fatally defective.

The requirements of Section 150 of the City Charter are perfectly legal and unless appellee has complied therewith he has lost his claim against the City.

The majority say that "The purpose of notice provisions such as are before us 'is to advise the municipality in what the negligence consists * * *.'" Citing City of Waco v. Landingham, Tex.Civ.App., 158 S.W.2d 79, 80, writ ref. I do not agree. Different cities have various provisions as to notice of injuries. The notice required by the City Charter of Waco is so different from the notice required by the Charter of San Antonio that the above case is of no help in construing the provisions of Sec. 150 in the Charter of the City of San Antonio.

The requirement of the San Antonio Charter is that the notice must state, among other things, "when, where and how" the injury occurred. Appellee's notice stated that the injury occurred about 7:30 A.M. on May 11, 1964, while Ramundo was a passenger on one of the buses operated by the Transit Board of Trustees of San Antonio and the City of San Antonio, at about the intersection of West Martin and North St. Mary's Street in the City of San Antonio. This statement agrees exactly with the City bus driver's report made to the City. As to "how" the injury occurred, the notice says: "Mr. Ramundo was caused to fall in said bus when the driver started and then negligently and suddenly stopped the bus." This statement as to how the injury occurred also corresponds with the report of the bus driver, except the bus driver does not admit that he was negligent in stopping the bus suddenly because a City policeman, without giving notice or signal of his intention to do so, suddenly stopped his three-wheeler motorcycle in the path of the bus. In my opinion, as to whether the sudden stopping of the bus was the result of the negligence of the City's bus driver or the negligence of the City's policeman, the bus driver, seated high in the bus, charged with the duty of keeping a proper lookout, was in a better position to know what caused the sudden stopping of the bus than was Ramundo, especially after he was thrown to the floor

of the bus and injured. Ramundo reported the accident as he saw it, and he told fully how it happened, and that meets the requirement of Section 150 of the Charter of the City of San Antonio.

The City of San Antonio had its driver seated high up in the front of the bus observing what was happening as it happened, and the City does not show that it was injured in any way by the failure of Ramundo to report the negligence of the City policeman, and that it did not have enough information to properly investigate the accident.

The provisions of Section 150 of the Charter while valid are against the common right and should be reasonably construed against the City. City of San Antonio v. Pfeiffer, Tex.Civ.App., 216 S.W. 207; City of Dallas v. Shows, Tex.Com.App., 212 S.W. 633.

To here hold that in order to show "how" an injury occurred a claimant must set out all of the acts of negligence relied on by him would add something to Section 150, rather than construe it reasonably strictly against the City.

The following cases are in point here: City of Abilene v. Fillmon, Tex.Civ.App., 342 S.W.2d 227; Werner v. City of Rochester, 77 Hun 33, 28 N.Y.S. 226. In Brolin v. City of Independence, 235 Mo.App. 360, 138 S.W.2d 741, the Court said:

"Defendant claims that the notice is insufficient in that it fails to state why plaintiff was traveling in the street at the time, instead of along the sidewalk adjacent thereto; that it fails to allege the defenctive condition of the sidewalk. We think that, since the notice complies literally with the statute in its terms, such compliance was sufficient. To hold otherwise would be to require that the notice, to be good, must state all of the claimed negligence of defendant upon which plaintiff relies for recovery; that the notice must contain something more than the

statute requires. But for the statute, defendant would not be entitled to any notice at all. We are unwilling to amend the statute, by judicial interpretation, and thereby read something into it which the legislature did not write into it. 'While the circumstances of the injury are to be stated in the notice, the statute does not require the causes which produced the injury to be enumerated.' McCartney v. City of Washington, 124 Iowa 382, 100 N.W. 80, loc. cit. 81. 'Technical accuracy is not required, neither is it necessary to set out the particular negligence relied upon.' City of Bessemer v. Barnett, 212 Ala. 202, loc. cit. 203, 102 So. 23, loc. cit. 25. The point is ruled against defendant."

See also MaGee v. Jones County, 161 Iowa 296, 142 N.W. 957, 48 L.R.A.,N.S., 141; Forbes v. City of Omaha, 79 Neb. 6, 112 N.W. 326; McCartney v. City of Washington, 124 Iowa 382, 100 N.W. 80. Gonzales v. City of Corpus Christi, Tex.Civ.App., 323 S.W.2d 495, is not in point here. There the notice incorrectly stated "where" the injury happened. There are a number of "where" cases cited, but they shed very little light upon cases which involve "how" the injury occurred.

The notice given in this case stated exactly "how" the injury occurred, to-wit, by the bus stopping suddenly and throwing Ramundo to the floor of the bus and injuring him. The evidence shows that this is "how" he was injured, the only dispute is as to whether the negligence of the bus driver or the negligence of the policeman caused the bus to stop suddenly. Section 150 of the Charter does not require that the notice set forth the acts of negligence relied upon by the claimant.

I cannot agree that there was a fatal variance between the notice and the evidence at the trial. I would affirm the judgment.