**Marilyn GUILLORY and Clayton Guillory**

v.

**The CITY OF BEAUMONT.**

No. 09 87 177 CV.

Court of Appeals of Texas, Beaumont.

Jan. 28, 1988.

Rehearing Denied Feb. 17, 1988.

Reversed June 1, 1988.

Alto V. Watson, II, Dryden, Watson & Grossheim, Beaumont, Alto V. Watson, III, Galveston, for appellants.

Frank D. Calvert, Benckenstein, Oxford, Radford & Johnson, Beaumont, for appellee.

OPINION

BROOKSHIRE, Justice.

Appeal from the granting of what has been designated as a "Partial Summary Judgment". The suit was brought by the parents of Cynthia Guillory. Cynthia was run over and killed by a vehicle at a frequently-used pedestrian school crossing on Calder Avenue in Beaumont. Calder Avenue is one of the heavily traveled streets serving the west and the north end of Beaumont. The City had maintained a crossing guard for elementary school children for approximately 2½ years at the corner of Calder and Oakland. The City had intentionally removed the crossing guard.

The parents sued the City of Beaumont, in its proprietary capacity, for the withdrawing of the crossing guard without putting into place any warning signs, devices or any alternative safeguards. The City

sought a summary judgment, maintaining that the cause of action was against the municipality in its governmental capacity.

To prevail, the City must show that it is entitled to a judgment as a matter of law and that there are no genuine issues as to any material fact or facts. The street crossing involved was a block from Dick Dowling Elementary School. Cynthia was a young, 7–year–old student at the school. The boundaries of the Dick Dowling School, as to scholastics, were all entirely within the limits of the City of Beaumont, particularly in the eastern section of the city. It must be remembered that this is an appeal from the granting of a summary judgment. Therefore, if any genuine issue as to a material fact is shown that would defeat the City's motion, or if a legal question is raised to the effect that the City is not entitled to a judgment as a matter of law, the summary judgment must be reversed.

### Ray Moore, the Crossing Guard

Ray Moore had worked as a crossing guard at the intersection in question for about 3½ to 4 years. The Appellants' deceased child had met her death about 2 or 3 months following the withdrawal of the crossing guard by the City. Ray Moore was not and had not worked for the Police Department of the City. Ray was laid off October 31, 1985. Ray had no badge. He was not authorized to direct traffic. He did not do anything for the police department. He was not authorized to issue traffic tickets. His job was merely to see that the kids crossed the street safely. To do this, he would wait for a lag in the traffic. When the traffic was heavy or normal, Ray simply waited until the traffic had a lull or lag in it to shepherd the children across Calder. He did not try to stop or control the flow of traffic on Calder Avenue to conduct the children to the other side. During a break in the traffic, he would walk to the middle of the street and, if traffic then appeared, he would wave his hands and attempt to stop the cars so that the young scholastics could come across Calder Avenue with safety.

The traffic, in the morning, at the intersection in question, was described as very heavy with some of the motorists driving fast. The speed limit was, at one time, 30 miles per hour but this speed limit was removed. Some motorists were driving as fast as 40 or 50 miles per hour down Calder. Calder was also described as a principal east-west street from downtown Beaumont, out to the west end, and out to 11th Street and the freeway.

A fair reading and analysis of Ray Moore's duties and responsibilities shows that any control of the traffic on Calder was incidental to his major responsibilities. For the purposes of summary judgment proof, we perceive that *an issue was raised* that Ray was performing both proprietary functions and governmental functions when he acted as a crossing guard. Under the settled law, Beaumont could be liable under these circumstances. *City of Port Arthur v. Wallace*, 141 Tex. 201, 171 S.W.2d 480 (1943); *City of Beaumont v. Silas*, 200 S.W.2d 690 (Tex.Civ.App.—Beaumont 1947, writ ref'd n.r.e.). *See Kling v. City of Austin*, 62 S.W.2d 689 (Tex.Civ. App.—Austin 1933, writ refused n.r.e.). We conclude that the trial judge erred in holding, as a matter of law, that Beaumont was acting solely in its governmental capacity, under this record, when it employed and placed the crossing guard at the crossing and, also, when it removed and discharged the crossing guard.

### Councilman David Moore

David Moore was a councilman for the City. He testified, in his deposition, that he recognized this crossing service as a function or service that the City participated in *to help its own citizens* and that this crossing guard service had been *maintained by the City, at the crossing in question, for a number of years*. Councilman Moore stated that it was a worthwhile service and he perceived that the failure to continue furnishing crossing guards endangered the lives of children at this and other busy intersections.

Proprietary functions of a city have been described as those functions which are in-

tended, primarily, for the private advantage or benefit of persons who reside within the city limits. Apparently, such is the case subjudice. We think this defeats Beaumont's claim to a summary judgment as a matter of law. This distinguishes those functions from the functions performed by a municipality for the general public. 40 TEX.JUR.2d *Municipal Corporations,* Sec. 685 (1976). We decide that a genuine issue as to a material fact is present in determining whether the maintaining, and then the eliminating, of the crossing guard was either a proprietary function or a combination of proprietary and governmental functions. This is true because, where a particular act or function is undertaken by a city which affords to a substantial degree or to a material extent the serving and protecting of its own resident inhabitants as distinguished from the general public, such acts or functions are proprietary. 40 TEX.JUR.2d *Municipal Corporations* Sec. 684 (1976). Hence, analyzing the duties, functions and responsibilities of Ray Moore, it is raised, under this record, that the majority of his time and majority of his functions were proprietary. Ray mainly kept the children on the sidewalk until they could cross the street safely. Hence, under summary judgment proof and practice, Beaumont has failed to show that it is entitled to a judgment, as a matter of law.

### Beaumont's Contentions

■ Beaumont contends that its decision to delete the crossing guard was due to limited financial resources involving the years 1985 and 1986 and that the City was exercising its discretionary powers in approving and passing the budgets relevant to those times. The City argues it is specifically exempted from any liability pursuant to *TEX.CIV.PRAC. & REM.CODE ANN. Sec. 101.056* (Vernon 1986).

Furthermore, the City maintains that the decision to delete the crossing guard program from its budget relieved it from liability; this being a policy decision made by the Beaumont City Council for which the City says it has protection under *TEX.CIV.PRAC. & REM.CODE ANN. Sec. 101.001,* et seq.

The *TEX.CIV.PRAC. & REM.CODE ANN., Sec. 101.056* (Vernon 1986), entitled "Discretionary Powers", categorically states that this chapter (including this *Section 101.056*) does not apply to a claim based on the failure of a governmental unit to perform an act that the unit is not required by law to perform. We do not read *Sec. 101.056* as being favorable to the City.

But this argument by the City is exploded by *TEX.CIV.PRAC. & REM.CODE ANN. Sec. 101.058* (Vernon 1986), entitled "Municipal Proprietary Functions", which reads:

"This chapter does not apply to a proprietary function of a municipality."

It is true that *Sec. 101.058* was repealed by Acts of 1987, the 70th Leg., 1st C.S. ch. 2, sec. 3.13, the repeal becoming effective on September 2, 1987. However, this article was in full force and effect as of the time of the death of Cynthia.

Moreover, the provisions of the Texas Tort Claims Act do not apply, we think, when the municipality acts in its proprietary capacity as opposed to its governmental capacity. Nor do the provisions of the Texas Tort Claims Act apply, we perceive, where the municipality is engaged in a mixed, intertwined function, mainly proprietary and, conceivably, partly governmental. *City of Gladewater v. Pike,* 727 S.W.2d 514 (Tex.1987); *Turvey v. City of Houston,* 602 S.W.2d 517 (Tex.1980). In *City of Gladewater, supra,* the court wrote, at page 519:

"A proprietary function is one intended primarily for the advantage and benefit of persons within the corporate limits of the municipality rather than for use by the general public. *Gates v. City of Dallas,* 704 S.W.2d 737, 739 (Tex.1986)...."

The crossing guard was protecting the lives and physical well-being of small children residing *in a small part of Beaumont.* Furthermore, the doctrine of non-liability is to be construed strictly against the City. *City of Austin v. Daniels,* 322 S.W.2d 384 (Tex.Civ.App.—Austin 1959),

*affirmed* at 160 Tex. 628, 335 S.W.2d 753 (1960).

 Beaumont also argues that this is an unappealable, partial judgment only and that the same is not a final judgment. Frankly, this is a troublesome question in this case. However, under the wording of the so-called partial summary judgment, itself, and because the functions of Ray Moore were arguably intertwined and mixed, the effect of the judgment entered by the trial court was to deny the decedent's parents of a realistic day in court. We read the motion, the pleadings and the "Partial Summary Judgment" to be, in effect, a total summary judgment. We hold that the same was appealable.

We add that, following the correct and accepted summary judgment practice, we have determined that the parents of the deceased child of a tender age are entitled to their day in court. In a fact situation, as here, where the City deleted and withdrew a crossing guard, whose duties, functions, actions and responsibilities were arguably mainly, if not solely, proprietary—although we concede that he did, *on infrequent occasions, under unusual circumstances, possibly perform isolated governmental functions* —where the crossing guard service had been maintained for a number of years and where the same had been discontinued without any adequate, alternative warnings that the guard had been withdrawn and in a crossing situation which was within 1 block of an elementary school; where the same crossing was used on a daily basis during the school term by children of a tender age, then our decision is an entirely reasonable, logical, fair and a just conclusion and result. The "Partial Summary Judgment" below is reversed and the cause remanded.

REVERSED AND REMANDED.