The CITY OF HOUSTON, Appellant,

v.

Carey SELPH et al., Appellees.

No. 13897.

Court of Civil Appeals of Texas.

Houston.

April 26, 1962.

R. H. Burks, City Atty., John Gano, Sr., Asst. City Atty., Houston, for appellant.

Ralph S. Carrigan, Houston, Baker, Botts, Shepherd & Coates, Houston, of counsel, for appellee Carey I. Selph.

WERLEIN, Justice.

Dorothy Patton and husband, Charles G. Patton, and Martin B. Hawkins, plaintiffs, sued Carey I. Selph to recover damages for personal injuries sustained by them when the car driven by appellee, Selph, ran into the back of the Patton car which had stopped behind a line of cars that had come to a stop on Memorial Drive in the City of Houston. A police car belonging to the City of Houston and driven by one Cubstead, a police officer, which had been following the Selph car about the same distance behind as the Selph car had been following the Patton car, ran into the rear of the Selph car, striking it with such force that it was caused to strike the Patton car again. Appellee Selph, as third party plaintiff, sued the City of Houston, third party defendant, to recover over against the City as contribution one-half of any amount which he might be forced to pay in the event plaintiffs recovered judgment against him.

The trial court entered judgment for the plaintiffs, based on the jury verdict, in the total sum of $9,000.00, and in favor of appellee Selph against the City of Houston in the sum of $4,500.00. The City of Houston has appealed from the judgment against it, and has assigned some seventeen points of error.

■ We think appellant's third point to the effect that the City of Houston is not liable to Selph for contribution because Cubstead was acting in a governmental capacity, is decisive of this case. Since Cubstead was acting in a governmental capacity, the original plaintiffs did not have a cause of action against the City of Houston, nor did they sue the City. The rule is well established that contribution cannot be recovered in a tort action from a party against whom the injured party had no cause of action. Wheeler v. Glazer, 137 Tex. 341, 153 S.W.2d 449, 140 A.L.R. 1301; Patterson v. Tomlinson, Tex.Civ.App., 118 S.W.2d 645, writ ref.; West Texas Utilities Co. v. Renner, Tex.Com.App.1932, 53 S.W.2d 451, 456; Sattelberger v. Telep, 14 N.J. 353, 102 A.2d 577; 18 C.J.S. Contribution § 11, p. 19.

■ The undisputed evidence pertinent to Point Three can be summed up as follows: Cubstead at the time of the collision was a police officer of the City of Houston, assigned to the Vice Squad. He was driving an unmarked police car belonging to the City. Since police officers in the Vice Squad work in pairs, he had with him his "partner," Police Officer Harmon. As customary in the Vice Squad, the officers wore plain clothes, but they had badges or credentials with them and carried pistols. The police car was equipped with radio which came on when the automobile was started, thus enabling the officers to be in constant contact with the police dispatcher. The car was assigned to such officers and they took turns in keeping it at their respective homes when off duty. They were not permitted to use the car except in connection with their work as police officers.

The collision in question occurred about 10 a. m. on October 29, 1958. Officer Cubstead had kept the car the night before. On that morning he had picked up Officer Harmon, and had checked in on the radio with the police dispatcher, and was driving to the police station. When asked if they worked in shifts, he said technically yes, but they worked any hours that their duties required regardless of days or nights. At the time in question he was assigned to day duty but didn't know what shift he was on; that they just worked on any case until it was finished and they would be in and out

of the police station, and sometimes away from home as long as two or three days at a time; and that as an officer with the Vice Squad he was subject to call on a 24-hour basis.

Cubstead testified that normally when he started on his duties, he would first pick up his partner and then if he had a special assignment he would go direct to it, and if not he would go to the police station; that the reason he was furnished the car was that he was assigned to 24-hour call and time would be saved if he did not have to go to the police station but could go direct to the place of an investigation; that he was at all times in contact with the police dispatcher from the minute he started the car and was subject to being called by him at any moment; that he had checked in after picking up his partner and had given the police dispatcher their number; and that at the time of the accident he was on duty as a law enforcement officer driving the police car in the performance of his duties.

He also testified in effect that as a member of the Vice Squad his general activities involved numerous under-cover investigations of violations of law conducted at irregular hours of the day and night; that they did not work on any specifically designated shifts or duty hours of the day or night, but worked such hours as were necessary to conduct their investigations; that they were on duty as law enforcement officers from the time they left their homes in the police car and had checked in with the police dispatcher until they returned home and checked off the air with police headquarters; that he performed no function for the City other than his duties as a law enforcement officer; that sometimes in making their investigations they relied on tips or information called in by people other than his chief, or department head, and in such event they would go immediately to investigate such information, whether day or night, and it was necessary to have the car assigned to them available

for such purpose; that he didn't recall working on any special investigation on the day of the accident.

It is appellee's contention that on the occasion in question Cubstead was merely transporting himself and his partner from their respective homes to the police station, and that hence he was not at the time engaged in governmental service for the City but merely engaged in performing a proprietary duty. It is true that Cubstead was on his way to the police station at the time of the collision, and he didn't recall that he was working on any specific investigation or assignment at such time. During the time he was driving to the station, however, he was on duty and subject to call at any moment, in which event he would not have continued on his trip to the police station but would have gone directly to the place where the investigation was to be conducted. His duties at the time encompassed far more than mere transportation of himself and Harmon to the police station. He had checked in with the police dispatcher and was in constant contact with him. He was then and there engaged in performing his services as a law enforcement officer, keeping in touch with police headquarters and ready at any moment to respond immediately to any assignment, investigation or the apprehension of law violators as directed by headquarters.

We think this case is distinguishable from City of Houston v. Shilling, 1951, 150 Tex. 387, 240 S.W.2d 1010, 26 A.L.R.2d 935, and City of Houston v. Wolverton, 1955, 154 Tex. 325, 277 S.W.2d 101, relied upon by appellee. In the Shilling case one of the grounds for recovery by plaintiff of damages for personal injuries resulting from a collision of a garbage truck owned and operated by the city and plaintiff's automobile, was the negligence of the city by its garage employees in failing to properly inspect and repair the brakes of the truck involved in the accident. The court held that the maintenance of the garage by the Garbage Department of the city was not a governmental function and hence the city

was liable to plaintiff for injuries sustained by her as a result of the collision.

In the Wolverton case the court held in effect that a city milk inspector, delivering a city-owned automobile to the city garage for inspection and repair, who was also carrying with him his book to be audited and collections to be turned in, was engaged primarily in a proprietary capacity in aid of the city's proprietary function of operating a garage, and hence the city was liable for damages resulting from the collision involving the city car.

Cubstead at the time in question was not engaged in any proprietary function, nor was the police dispatcher with whom he had checked in, nor was the police headquarters where he would, but for the accident in question, continue performance of his duties as a law enforcement officer unless dispatched on some other assignment before or after arriving at the police station. He was not going to the police station to engage in any proprietary function. There is no evidence of any defective condition of the police car or of any defect in the street, or of any other condition associated with the performance of any proprietary function of the City which might have contributed to the accident. The use being made of the car assigned to him and his partner was necessary in the performance of his governmental duties. The act performed by the City through Cubstead, its law enforcement officer, was public in nature and performed at the time in furtherance of general law enforcement for the interest of the public at large, and in the exercise of a governmental function. It was not performed primarily for the pecuniary or other benefit of those within the corporate limits of the municipality. City of Houston v. Quinones, 142 Tex. 282, 177 S.W.2d 259, 261; City of San Angelo v. Deutsch, 1936, 126 Tex. 532, 91 S.W.2d 308; City of Dallas v. Smith, 1937, 130 Tex. 225, 107 S.W.2d 872; City of Wichita Falls v. Robison, 121 Tex. 133, 46 S.W.2d 965; Valdez v. Amaya, Tex.Civ.App.1959, 327 S.W.2d 708.

We are not unmindful of the tendency in some jurisdictions to abrogate the rule of law that exempts cities from liability for negligence in the performance of governmental functions. It is our view that if the present rule of immunity as established in this State by a long line of authorities is to be changed, it should be done by legislative enactment. City of Port Arthur v. Wallace, 141 Tex. 201, 204, 171 S.W.2d 480, 481.

Since it conclusively appears from the record that Cubstead at the time of the collision in question was as a matter of law engaged in performing solely a governmental function, the trial court erred in rendering judgment for contribution against the City.

Judgment reversed and rendered.