**AMERICAN COOPERAGE COMPANY,**
**Inc., et al., Appellants,**

**v.**

**Jack CLEMONS, Appellee.**

No. 16399.

Court of Civil Appeals of Texas.

Fort Worth.

Jan. 25, 1963.

Rehearing Denied Feb. 22, 1963.

Rawlings, Sayers, Scurlock & Eidson and Lloyd Scurlock, Fort Worth, for appellants American Cooperage Co., Inc., and Curtis Foreman, Jr.

S. G. Johndroe, Jr., City Atty., and Jerome H. Parker, Jr., Asst. City Atty., Fort Worth, for appellant City of Fort Worth.

Spurlock, Schattman & Cave and Tom Cave, Fort Worth, for appellee.

MASSEY, Chief Justice.

Plaintiff Jack Clemons, employed by the City of Fort Worth as a "lineman", was injured while performing the duties of his employment as the result of collision against the cable supporting the pole on which he was working by a truck of the American Cooperage Company, Incorporated, being driven by its employee Curtis Foreman, Jr.

During plaintiff's period of total disability the City of Fort Worth paid his salary and also paid all or part of his medical and hospital expenses. There was no contract entered into between the city and plaintiff in connection therewith whereby there was any provision that the amount of said payments should be credited against plaintiff's rights, if any, to recover damages on account of his injuries. The total amount so paid was $3,313.24.

Plaintiff brought suit against American Cooperage Company and its driver. In turn they joined the City of Fort Worth as a co-defendant from which they sought contribution as to any damages which might be assessed against them.

Based upon a jury verdict, judgment was rendered against American Cooperage Company and its driver, and also against the City of Fort Worth. Although the jury found plaintiff's damages as $12,450.00, the trial court credited the sum of $3,313.24 against him and entered judgment in his behalf and against the Cooperage Company and its driver in the sum of $9,136.76. Cooperage Company and its driver were granted judgment in contribution against City of Fort Worth. From this judgment American Cooperage, its driver Curtis Foreman, Jr., and the City of Fort Worth perfected appeals.

Judgment as against American Cooperage Company and Curtis Foreman, Jr., is reformed in that plaintiff is awarded the damages found by the verdict, and, as so reformed, is affirmed. Judgment against the City of Fort Worth is reversed and judgment rendered that no contribution is recoverable from it.

The Cooperage Company's truck collided with the cable supporting the pole on which plaintiff was working at approximately 3:30 P.M. on November 28, 1958, in Fort Worth, Texas, at a point near the intersection of Northwest 21st Street and Jacksboro Highway. Jacksboro Highway, at the point of the accident, runs in generally a north-south direction. Northwest 21st Street begins at this highway and runs toward the east in a fairly steep "rise", thence into a curve toward the north. The streets come together in what is known as a "T" intersection. The eastbound traffic lane of Northwest 21st Street is wide enough for two vehicles side-by-side. The westbound traffic lane is of like width. There is a dividing island of four or five feet between these traffic lanes. In this dividing island, at the eastern edge of Jacksboro Highway, is a pole which supports traffic signal-control lights. Approximately 5 feet of the pole is in the ground, and approximately 30 feet extends above ground. Near the top are lines which come from the east to supply power to operate the signal-controls, and a little below these lines a cable is con-

nected which runs from the pole across Jacksboro Highway to another similar pole. On this cable the set of signal-control traffic lights is suspended over Jacksboro Highway.

Sometime shortly before the time of plaintiff's injury there had been a previous accident at the intersection, pursuant to which the aforedescribed pole had been struck and caused to bend toward the north, more or less across the eastbound traffic lane of Northwest 21st Street. The "hot" wires which supplied power for the signal-control lights were damaged. We speak of the wires as "hot" since they continued to supply power to the signal-control lights and these lights continued to be operated up until the time of plaintiff's injury. Upon receiving notice of the condition following the prior accident, the City of Fort Worth caused instructions to be issued in its Signal and Light Division for a crew of men to go to the scene and straighten the pole and repair the damaged wires. The crew consisted of plaintiff, as "lineman", Daryl Lanier, as "crew foreman", and James Mahana, as "helper". No member of the crew had authority sufficient to constitute him a vice-principal for the City of Fort Worth, and it is established as a matter of law that each member, in his relationship to the others, was his "fellow servant". The evidence indicated that each of the men was experienced and each considered the others competent and reliable.

Upon arriving at the scene it was readily apparent that the remedy required necessitated connecting a cable to the pole, with application of tension from some point to the north thereof to draw it back to an upright position, followed by renewed anchorage of the base of the pole and repair of the wires connected at its top. Accordingly, the crew stationed the winch-truck in which they had arrived at a point to the north of the pole, and some 25–30 feet to the north of the aforedescribed westbound traffic lanes. A cable from the winch on the truck was carried across these traffic lanes, and plaintiff mounted the pole and used a rope

or line to draw the cable up to what he considered a proper point on the pole for the exertion of tension thereon to restore it to an upright position. Tension was applied through operation of the winch and the pole was pulled into position. There was evidence in the record to the effect that Lanier took precaution to warn and direct traffic at the time the cable was brought to the pole and drawn into position where it was fastened as preliminary action to exerting tension thereon. Plaintiff had observed these precautionary activities. Other evidence in the record disclosed that there were no warning signs or barricades carried to the scene on the truck, and that none were placed in position to warn approaching motorists. Plaintiff knew about the absence of signs or barricades.

After the pole was restored to the vertical position plaintiff reascended it. He took a position at or near its top where he proceeded to repair the "hot" wires previously mentioned. He did not observe and did not know whether any precautions were being taken in his behalf in relation to approaching traffic by Lanier and Mahana after he reascended the pole. As a matter of fact they were taking no precautions. They busied themselves carrying material to reset the pole. The evidence showed that all members of the crew thought that the cable had been fastened at a point high enough on the pole that vehicular traffic would not come in contact with it. In this they were mistaken. The regular maximum height of vehicular traffic permitted by law was 13 feet 6 inches and the height of the bed on the Cooperage Company truck was within this maximum. The cable was only about 11–12 feet above the street, at least on the most northerly of the two westbound traffic lanes, although it was 15–16 feet above ground level where it was connected to the pole. The other end of the cable, at the winch on the truck, was only 4–5 feet above ground level. This resulted in the reduced height of the winch over the most northerly of the westbound traffic lanes.

While the activities of the crew were as aforedescribed, defendant Foreman, driving the truck of the defendant Cooperage Company, approached from the east, on Northwest 21st Street and in the right-hand or north traffic lane. He stopped before entering Jacksboro Highway in obedience to a signal from the traffic light. Foreman had seen neither plaintiff working on the pole, the cable attached to the pole, nor the winch-truck to his right and off the pavement. He did see Lanier and Mahana engaged in some activity at the base of the pole. Upon change of the signal light to the green and "go" signal, he started up the truck to proceed in a westerly direction, preparatory to the negotiation of a left-hand turn. Almost immediately he heard Lanier call out a warning or command to stop. He stopped the truck within a very few feet. However, the front of the truck-bed, two or three feet below the top, came into collision with the cable. The jolt attendant thereto bent the pole suddenly and violently toward the south so that it struck against the side of the bed of the truck. The jolt broke plaintiff free of his anchorage on the pole so that he slid down it and fell into the bed of the truck. All this resulted in his personal injuries.

On the matter of injuries to workmen in streets and on highways, see generally: 5 A.L.R.2d p. 757, Annotation, "Liability for injury by vehicle to construction or maintenance worker in street or highway", p. 796, sec. 17, "Last clear chance; wilful and wanton misconduct", and Part IV, "Injuries to particular workers or under particular circumstances", subd. g, "workers on ladders, scaffolds, or poles", sec. 34, "Injury by motor vehicle or wagon; negligence of driver".

■ Texas being one of the jurisdictions in which the doctrine of assumed risk is applicable only where there exists a master-servant relationship (Wood v. Kane Boiler Works, 1951, 150 Tex. 191, 238 S.W.2d 172), the instant case, in respect to the contentions of American Cooperage Company and the driver of its truck, is to be tested under the rules of the doctrine of *volenti non fit injuria*—voluntary exposure to risk.

■ We have reached the conclusion that the doctrine of *volenti non fit injuria*—voluntary exposure to risk—was not in this instance shown to have application as a matter of law to defeat plaintiff's claim for damages on account of his injuries. Under the verdict, in view of the issues therein contained and the jury's findings thereon, judgment was rendered in favor of plaintiff and against American Cooperage Company and its driver. By the verdict said defendants were convicted of negligence amounting to a proximate cause of plaintiff's injuries under findings that the truck driver failed to keep a proper lookout and that such failure was a proximate cause of plaintiff's injuries. The findings mean that the truck driver should have been so sufficiently observant that he should have seen that the cable holding the pole in position was present and at a height such that his truck would come in contact with it.

By its verdict the jury furthermore found that plaintiff knew or should have known of the risk of injury to himself attendant under the circumstances "in working upon the pole", but that he did not voluntarily expose himself to the risk of injury "in working upon the pole". It is undisputed in the evidence that at and immediately prior to the time of plaintiff's injury neither of his co-employees was doing anything to warn motorists of the presence of the cable holding the pole on which plaintiff was working, but it is not conclusively established in the evidence,—and therefore an issue of fact thereon existed,—that plaintiff was aware of the fact that his co-employees were not warning or directing traffic.

No issue was submitted to the jury inquiring whether plaintiff knew that neither of his co-employees was watching for, warning, or directing traffic, to the end that no vehicle would come in contact with the cable supporting the pole on which he was working. We do not believe that an answer to the question of fact in this regard could

be presumed to have been made against plaintiff, and furthermore presumed to be included in the issue posing the question of whether he knew or should have known of the risk of injury to himself attendant under the circumstances "in working upon the pole". Nowhere was any issue submitted inquiring whether plaintiff, with full knowledge and appreciation of the danger to himself because of certain conditions known to exist, to-wit:—that the cable was located across a street on which traffic was moving, at a height which he knew might be insufficient to clear the top of a passing truck with its load, and that those persons present and assisting him were taking no precautions in his behalf to avert and prevent such a vehicle from striking against the cable,—voluntarily chose to remain upon the pole supported by the cable in the completion of his work and in an exposure of himself to the risk of injury from vehicular contact with the cable.

In the instant case it was such risk that would be material in considering whether his claim could be defeated on a plea of *volenti non fit injuria*—voluntary exposure to risk,—and not the usual risk of a lineman working upon a pole known to be insecurely anchored beneath him, etc. If we make any assumption that the issue which was submitted did embrace the elements set forth in the preceding paragraph it becomes apparent that the issue would have been subject to an objection that it constituted a charge upon the weight of the evidence for it necessarily assumed that plaintiff knew that his co-employees were taking no precautions to prevent vehicular traffic colliding with the cable. This was an issue of fact, in view of the evidence, which was not resolved by the jury.

In view of what has been said it should be obvious that we do not consider the answer to the issue as submitted to be one controlling the entry of judgment. Even should we be of a contrary opinion its controlling effect was destroyed by the jury's answer to the issue with which it was coupled. Coupled with the issue as submitted was an

issue inquiring of the jury whether plaintiff voluntarily exposed himself to the risk of injury in working on the pole. In answer to this issue the jury returned its negative answer, i. e., it refused to find that plaintiff had voluntarily exposed himself to the risk of injury. Had a proper controlling issue been submitted and answered against plaintiff to the effect that he chose to remain on the pole with full knowledge and appreciation of the attendant facts hypothecated in our discussion above, it would be our opinion that the evidence in the record is such that the question of whether he "voluntarily" chose to do this would be resolved against him as a matter of law. The same thing could not be said in view of the form of submission. One reasonable explanation of the jury's finding against voluntary exposure might lie in a belief on their part that plaintiff did not consent that his fellow servants abandon all precautions in respect to traffic.

■ The negligence on the part of the truck driver for American Cooperage Company, in his failure to keep a proper lookout, was not shown to have fallen within the scope of the dangers to which plaintiff voluntarily exposed himself. Knowledge of the very hazard which does result, and appreciation of the danger thereof, is essential to the applicability of the *volenti* doctrine. A case decided subsequent to the decision in McKee, General Contractor v. Patterson, 1954, 153 Tex. 517, 271 S.W.2d 391, upon which the Cooperage Company strongly relies, involved somewhat the same question of the instant case in that the negligence of the defendant existed through the defendant's failure to keep a proper lookout for the safety of plaintiff. Hobbs v. Grant, 1958, (Tex.Civ.App., Austin), 314 S.W.2d 351, writ ref., n. r. e. The court quoted the rule applicable to such a case from 65 C.J.S. ("Negligence", Part VIII, "Assumed Risk, Incurred Risk, Etc.", § 174 "Applicability of Doctrine", at page 852), as follows: " 'The doctrine of assumed risk is inapplicable where the danger and peril

of the situation were not the proximate cause of the injuries, as where defendant was guilty of willful and wanton misconduct, or where, apart from the assumed risk, defendant or a third person was negligent, and such negligence was the proximate cause of the injury suffered, unless plaintiff participated in such negligent acts or knew or had reason to believe that they were being committed or were about to be committed.' "

The same case cites that of Wood v. Kane Boiler Works, 1951, 150 Tex. 191, 238 S.W.2d 172, 174, where, in speaking of the doctrine of voluntary exposure to risk, the court said: "It means that the injured party consented to the act or omission which caused his injury and which, without such consent, would be a legal wrong." There is no suggestion in the case before us that the plaintiff consented to the failure of the truck driver to keep a proper lookout.

Incident to our discussion is to be found our holding against additional contentions of American Cooperage Company and its driver. Such contentions are that plaintiff, in working upon the pole, was negligent in that he had knowledge of the risk of injury to him flowing therefrom, was negligent in so doing when nothing had been done to warn motorists of the obstruction created by the cable, and was negligent in obstructing the street by failing to attach the cable higher on the pole. As to each item of such negligence it is contended that the overwhelming weight and preponderance of the evidence shows that plaintiff was guilty thereof if it not be proper to hold that such was conclusively shown by the evidence. Said contentions are overruled. Each matter constituted a jury question. Either the charge to the jury failed to raise a proper question or the jury's findings were against the defendants.

By other answers the jury found that plaintiff was negligent in not asking that signs or barricades be posted to warn approaching motorists, but that such failure was not a proximate cause of his fall. The jury then proceeded to find that plaintiff's fellow servant Lanier was negligent in failing to post barricades and that such failure was a proximate cause of plaintiff's fall. It is contended that plaintiff's negligence in failing to ask for signs or barricades was a proximate cause of his injuries as a matter of law and that there is a conflict in the verdict in view of the jury's findings that Lanier's negligence in failing to place the barricades amounted to a proximate cause of plaintiff's injuries while simultaneously finding that plaintiff's negligence in failing to ask for the barricades was not a proximate cause of his injuries.

Upon the matter of conflict we overrule the contention made. Test of whether a complainant is entitled to obtain a reversal by reason of what is contended to be a conflict is whether taking the finding alone in the one instance a judgment should be entered in favor of the plaintiff; and taking it alone in the other, judgment should be entered in favor of the defendant. Little Rock Furniture Mfg. Co. v. Dunn, 1949, 148 Tex. 197, 222 S.W.2d 985. Only in such instances would there be a conflict fatal to the judgment. The case before us is not such for American Cooperage Company and its driver could reap no benefit by the conflict they assert. Neither of the findings, standing alone, would entitle them to a verdict nor deprive plaintiff of the finding against them upon which judgment in his behalf was founded.

Plaintiff's negligence in failing to ask for signs and barricades was neither the proximate cause of his fall and resultant injuries as a matter of law, nor did the evidence inhibit the jury's finding that his negligence in this respect was not a proximate cause. In the ordinary case the matter of proximate cause is a question for the jury to determine from all the facts and circumstances before it. The rule is applicable in the present instance.

In the submission made of the case, as applied to the liability of the City of Fort Worth, the defense of assumed risk on the part of the city was no more sufficiently dealt with by the special issues submitted than was the defense of *volenti non fit injuria* discussed in connection with the points of error of American Cooperage Company and its driver. What we have held relative thereto applies to the contentions of the city. The City of Fort Worth cannot avoid liability under such theory.

■ The undisputed evidence and answers returned by the jury to issues submitted establish that the City of Fort Worth could not have been held directly liable to plaintiff because it has a complete defense. This defense would be that any negligence on its part which amounted to a proximate cause of plaintiff's injuries lay in the acts or omissions on the part of plaintiff's fellow servant. Lanier was the "foreman" on the crew of which plaintiff was the "lineman". Mahana was the "helper". We believe that evidence in the record conclusively established that neither of plaintiff's co-employees could be deemed a vice-principal, and contrarily established that both were his fellow servants. It was the negligence of Lanier which the jury found to have amounted to a proximate cause of plaintiff's injuries. Being possessed of a complete defense of any suit by plaintiff and not directly liable for the payment of damages to him on account of his injuries, the city could not be compelled indirectly, through the device of contribution, to pay the same damages. The attempt of American Cooperage Company and its driver to impose liability for contribution upon the City of Fort Worth must fail, and the judgment decreeing liability on the part of the city reversed.

In support of our conclusions expressed in the preceding paragraph see: Vernon's Ann.Tex.Civ.St., Art. 2212, "Contribution between joint tort feasors"; 60 A.L.R.2d 1366, Annotation: "Contribution between negligent tortfeasors at common law", at page 1386, sec. 9, "Personal defenses (unrelated to status) available to one joint tortfeasor as against injured person as affecting application of views"; Patterson v. Tomlinson, 1938 (Tex.Civ.App., Austin), 118 S.W.2d 645, error refused; City of Houston v. Selph, 1962, (Texas Civ.App., Houston), 356 S.W.2d 850; Ft. Worth & Denver Railway Company v. Threadgill, 1955 (C.C.A. 5th Cir.), 228 F.2d 307; Phillips-Jones Corp. v. Parmley, 1937, 302 U.S. 233, 58 S.Ct. 197, 82 L.Ed. 221.

By cross-assignment the plaintiff complains because the trial court credited the amount of $3,313.24 against the total of the $12,450.00 damages in his behalf found by the jury, and seeks reformation of the judgment entered so as to award him the amount found by the jury. In view of our holdings in connection with the asserted liability on the part of the city, culminating in the decision that it is entitled to a take nothing decree as applied to the suit of American Cooperage Company and its driver for contribution, we believe it proper to treat the case as having become one wherein the $3,313.24 heretofore paid by the City, to or for the benefit of the plaintiff, is to be treated as having been paid by a volunteer. The determination of whether the payor was a volunteer would be determinable as of the time of judgment. Phillips-Jones Corp. v. Parmley, supra.

■ Where money is paid to one under such voluntary circumstances, and the payee thereafter obtains judgment against a third person for and on account of personal injuries and expenses attendant thereto, he against whom judgment is so obtained is not entitled to any credit on the judgment against him by reason thereof even though the payments made to or for and in behalf of the plaintiff were occasioned by those same injuries and attendant expenses for which the judgment is obtained. R. E. Dumas Milner Chevrolet Company v. Morphis, 1960 (Tex.Civ.App., Fort Worth), 337 S.W.2d 185, writ ref., n. r. e.; Green v. Rudsenske, 1959 (Tex.Civ.App., San An-

tonio), 320 S.W.2d 228; Morgan v. Woodruff, 1948 (Tex.Civ.App., Galveston), 208 S.W.2d 628; Missouri Pacific Railway Company v. Jarrard, 1886, 65 Tex. 560. The plaintiff is entitled to have his judgment for $12,450.00.

█ Judgment of plaintiff Jack Clemons against American Cooperage Company, Inc., and Curtis Foreman, Jr., is reformed by an increase of the amount awarded as damages from the sum of $9,136.76 to the sum of $12,450.00, and as so reformed is affirmed. Judgment for contribution in favor of American Cooperage Company, Inc., and Curtis Foreman, Jr., against the City of Fort Worth is reversed and rendered.