The CITY OF HOUSTON, Appellant,

v.

Jim C. WATSON, Jr., a Minor, et al., Appellees.

No. 14290.

Court of Civil Appeals of Texas.

Houston.

Feb. 13, 1964.

Rehearing Denied March 5, 1964.

R. H. Burks, City Atty., Herbert M. Beazley, Asst. City Atty., and Edgar Pfeil, Sr. Asst. City Atty., Houston, for appellant.

Criss Cole, Houston, guardian ad litem for Jim C. Watson, Jr.

Bill Allen and W. James Kronzer, Houston, and Hill, Brown, Kronzer, Abraham, Watkins & Steely, Houston, of counsel, for appellees.

WERLEIN, Justice.

This suit was brought by Jim C. Watson, Jr., a minor, by and through his duly appointed guardian ad litem, and Jim C. Watson, Sr., father of said minor, to recover damages for severe personal injuries sustained by said minor on April 20, 1959, when the motor scooter he was riding in the 1200 block of Cheshire Street in the City of Houston struck a hole in the street, went out of control, fell to its side and caught fire. Pursuant to the verdict of the jury, which included findings that the occurrence was proximately caused by the City's failure to make proper inspection of the location in question, judgment was rendered in favor of the minor plaintiff and his father for their respective damages.

Appellant has grouped in its brief its points 1 through 27, inclusive, 32 through 36, inclusive, 40, and 44 through 47, inclu-

-sive. These points are all interrelated and generally have to do with the error of the court in overruling appellant's motion for judgment in its favor based upon the jury's answer to Special Issue No. 1, that the City was not negligent in failing to repair the hole in question prior to April 20, 1959, when the injury occurred. Appellant also complains that the court erred in overruling its motion to set aside the answers of the jury to Special Issues Nos. 3 and 4, and to enter judgment for the defendant after setting aside the same, because Special Issue No. 3 is not a controlling or ultimate issue and cannot be the basis of a valid judgment against the City, since there is no allegation whatever in appellees' claim filed with the City alleging that it was at fault for failing to make an inspection of the street and the hole that had been repaired, and further because the jury had already, in answer to Special Issue No. 1, found that the City had repaired the hole in question prior to the date of the minor's injury. Appellant further asserts that the court erred in refusing to set aside said Special Issues Nos. 3 and 4 because there is no evidence to support the same and insufficient evidence, and no pleading to raise such issues, and also because the court erred in overruling appellant's motion for judgment non obstante veredicto. It is appellant's contention that it had no actual or constructive notice of any condition that would put upon the City the duty to make an inspection inquired about in Special Issue No. 3, and that the court erred in refusing to set aside the answer to Special Issue No. 4 because there is no causal connection between the failure to inspect inquired about in Special Issue No. 3 and the occurrence in question.

A brief summary of the evidence is necessary to a consideration of the foregoing points. The evidence shows that about dusk on the evening of the accident, said minor, then 14 years of age, was riding the motor scooter in an easterly direction on Cheshire Street, traveling in a straight line along and over said street, and on the right side thereof, with his headlight burning, and at a speed variously estimated at 15 to 25 miles per hour. The scooter hit a hole in the street which was located near and in front of the premises at 1235 Cheshire Street, variously estimated to be of depth approximately 3 inches to 6 to 8 inches, and width ranging from 3 to 5 feet across the street and from 1½ to several feet parallel thereto. Upon hitting the hole the scooter got out of control, finally fell on its right side, skidded some distance and burst into flames, with young Watson pinned underneath.

There is evidence that the hole was reported to the City approximately two months before the accident and that about one month before the accident the hole was repaired by the City. It is undisputed that Cheshire Street is paved with concrete and that the City employees in repairing the hole did not fill it with concrete but with a cold asphalt mix. Mr. Sweeton, one of the City employees, testified that he reported to his foreman, Mr. Duncan, that the hole was in a concrete street so that the foreman could notify the permanent paving division of the City and it could come out and repair the hole with concrete. He agreed that, when a temporary repair was made in a concrete street with asphalt mix, as was done, he expected the permanent paving division of the City to follow with the necessary concrete repair.

Mr. Duncan, Superintendent of Street Maintenance, Division No. 5, which included the location in question, testified in substance that he did not see the hole until more than a month following the accident; that the early temporary repair was not done in the manner in which the hole was ultimately to be repaired; that the permanent paving department was expected to follow with the necessary concrete repairs before the hole became in disrepair again; and that a hole in a concrete street repaired with an asphalt mix will not stay repaired as long as one repaired with concrete. With respect to the asphalt mix repair made about a month before the accident, he testified

that a lady reported a hole, and that on the same evening three of his men made an emergency repair of the hole that was there, and that he reported the hole to the paving division on the following morning.

The evidence shows that the temporary repair of the hole with cold asphalt mix did not hold up, but that it gradually broke down, washed out and disintegrated, so that by the time of the accident the hole was again in about the same condition it was in at the time the temporary, emergency repair was made. Mr. Duncan, who had the original temporary repair made, testified that he received no notice with respect to the hole after making the temporary repair, but possibly some other person in his division could have received a complaint.

Witness Bommarito, who first reported the hole about a month before the temporary repair was made, testified unequivocally that after the temporary repair broke down, he again reported the hole to the City about a week before the accident. The temporary repairs lasted two weeks at the most, according to this witness, after which the hole became virtually in the same condition it was before. We have not undertaken to summarize all the testimony in the statement of facts which consists of nearly 1000 pages, although we have considered all of the evidence adduced at the trial.

To Special Issue No. 1, the jury found that before April 20, 1959, the City did not fail to repair the hole in such manner as the same would have been repaired by a person of ordinary prudence in the exercise of ordinary care under the same or similar circumstances. There is no evidence of any repair being made before April 20, 1959, the date of the accident, other than the temporary emergency repair hereinabove discussed. It is manifest, therefore, that the jury in answering Special Issue No. 1 found merely that the City was not negligent in making the temporary repair as was done under the circumstances existing at such time. The record is replete with

evidence showing that such temporary repair broke down and that at the time of the accident the hole had virtually resumed its former condition.

Appellees rely upon the jury's affirmative findings to Special Issues Nos. 3 and 4, reading:

### SPECIAL ISSUE NO. 3

"Do you find from a preponderance of the evidence that before April 20, 1959 and after undertaking to repair the location in question, the Defendant, City of Houston, failed to make such inspection of such location as would have been made by a person of ordinary prudence in the exercise of ordinary care under the same or similar circumstances?"

### SPECIAL ISSUE NO. 4

"Do you find from a preponderance of the evidence that such failure, if you have so found, was a proximate cause of the occurrence in question?"

Appellant asserts that there can be no recovery herein because the notice of claim filed with the City Council does not allege as an act of negligence upon which appellees relied the failure of the City to make an inspection of the street at the location of the hole in question. Article IX, Sec. 11, of the Charter of the City of Houston, provides for a notice in writing to the City within 90 days of the injury,

"* * * stating in such written notice when, where and how the injury or destruction occurred, and the apparent extent thereof, the amount of damage sustained, the amount for which claimant will settle, the actual residence of the claimant by street and number at the date the claim is presented, and the actual residence of such claimant for six months immediately preceding the occurrence of such injuries or destruction, and the names and addresses of the witnesses upon whom he relies to establish his claim, * * *"

The notice given was attached to a letter dated May 14, 1959, addressed by appellees to the City and received by the City on June 3, 1959. In such notice appellees stated that unless they heard otherwise they would assume that their letter and notice met the Charter requirements. The notice given clearly showed when, where and how the injury occurred. It went further and stated that on belief of information then on hand, the cause of the accident was the negligent maintenance and repair of Cheshire Street, more specifically in the 1200 block thereof, as well as the failure of the City through its employees to keep and maintain said Cheshire Street in a reasonably safe condition for the users thereof.

■ It is our view that such notice substantially complies with the requirements of the City Charter and that it was sufficient. The provisions of the City Charter are not such as to require the injured party to state the acts and omissions of negligence he expects to rely upon in court with the same particularity and meticulosity that may be required in pleadings. 62 A.L.R.2d 340, at 403; City of Houston v. Holden, Tex.Civ. App. 1960, 336 S.W.2d 193, writ ref., n. r. e.; Perry v. City of San Diego, 80 Cal. App.2d 166, 181 P.2d 98. Upon re-examination of our opinion in the case of City of Houston v. Hagman, Tex.Civ.App., 347 S.W.2d 355, writ ref., n. r. e., we have concluded that while the case was correctly decided, the dictum in such case places upon the injured party a greater burden than is required of him by the Charter of the City of Houston. Furthermore, in the instant case the statements in the notice as to the cause of the injury being the negligent maintenance and repair of Cheshire Street in the 1200 block and the failure to keep and maintain the same in a reasonably safe condition for users, are quite broad. The word "maintenance" as used in the notice is in its context broad enough to include reasonable inspection prerequisite to the keeping and maintenance of the street in a usable condition. Moreover, a statement as to whether or not the City had made a

reasonable inspection of a particular location would be of no aid in determining when, where and how the injury occurred. There is no inconsistency in the finding by the jury that the City was not negligent in making the only repair that was made, and the finding that the City was negligent in failing to make an inspection before the time of the injury and after the temporary repair had been made.

The instant case is also clearly distinguishable from Gardner v. City of Houston, Tex.Civ.App., 320 S.W.2d 715, cited by appellant. In that case the notice failed to state correctly where the accident occurred, and it was impossible for the City to locate the place of the injury without further information from the claimant. An examination of the other authorities cited by appellant with respect to fatal variances between the facts set out in the notice and those offered in evidence, clearly shows that such cases are factually inapplicable to the instant case. See City of Waco v. Landingham, Tex.Civ.App., 158 S.W.2d 79, writ ref., and Cawthon v. City of Houston, Tex. Com.App., 1921, 231 S.W. 701.

■ Appellant contends that where the causes of the injury are defects not traceable directly to acts of the City but to the failure to inspect, the City must have had notice of the defects, actual or constructive, and have had a reasonable time and opportunity to remove the same. The City by its employees in charge of making the repairs knew that the repair which had been made was merely a temporary emergency repair and that the asphalt mix placed in the hole would not hold up as concrete would. Moreover, the City was given notice a week before the accident of the hole which had occurred after the temporary repair had been made. The testimony of the City's Superintendent, Mr. Duncan, hereinabove referred to, clearly indicates that the City had ample time and opportunity to make at least another temporary repair before the accident after being notified of the hole by Mr. Bommarito.

The next question is whether the finding of the City's negligent failure to make an inspection, as alleged by appellees, is a finding of an ultimate fact under the circumstances of this case and the evidence adduced, which will support the judgment entered by the trial court. The jury found that such failure was a proximate cause of the occurrence in question. The testimony of some four or five witnesses shows that there was a need to repair the hole after the temporary repair disintegrated. The responsible City employees knew that only a temporary emergency asphalt repair had been made and that usually such a repair in a concrete pavement will break down sooner than a concrete repair. They reported the situation to the permanent paving division of the City in expectation that such division would follow up with a concrete repair, which was not done, however, until some time after the accident. The jury might well have concluded that under the facts established the City should have anticipated the likelihood of a breakdown in the cold asphalt mix repair and should have thereafter inspected the location to determine what had happened.

It is our view that under the evidence and facts of this case the City was under a duty to use ordinary care to make a reasonable inspection. Such an inspection would have disclosed the disintegration of the temporary asphalt repair and a dangerous situation which could have been remedied prior to the accident in question. The repair which was made lasted only some two weeks and the hole which followed the breakdown thereof was virtually the same as the hole prior to the time of such repair, and was the only hole of any appreciable size in the block.

The law is well settled that to render the City liable it must have either actual or constructive notice of the defect in the street. The testimony of Mr. Bommarito shows that the City did have actual notice of the hole responsible for appellee's injury. It is sufficient, however, if those charged with the supervision and superintendence of a street could, by the exercise of reasonable care and diligence, have known of the defective condition. 40 Tex. Jur.2d, pp. 328–331, §§ 639, 640. This is substantially what the jury found. The City in the instant case was under a duty to repair the hole if it was not a trivial one but was one deep enough to endanger the safety of those using the street.

This Court will deem that the trial court found in support of its judgment that a reasonable inspection by the City would have disclosed a hole deep and dangerous enough to necessitate prompt repair which the City could and would, in the exercise of ordinary care, have made prior to the accident. Hence, the failure to make such reasonable inspection was a proximate cause of the occurrence. Appellant's objections and exceptions to Special Issues Nos. 3 and 4 did not point out specifically what they now complain of, and are insufficient to prevent presumed findings by this Court. They did not point out that Special Issue No. 3 could not form the basis of any judgment without being coupled with other issues not included in the court's charge, nor did they point out what elements had been omitted from Special Issue No. 3 or what other issues were necessary to establish appellant's liability. Texas Employers' Insurance Ass'n v. Hudgins, Tex.Civ.App., 294 S.W.2d 446, writ ref., n. r. e.; Cree v. Miller, Tex.Civ.App., 255 S.W.2d 565, 572, writ ref., n. r. e.; Dee v. Parish, 1959, 160 Tex. 171, 327 S.W.2d 449; Anderson v. Broome, Tex.Cix.App., 233 S.W.2d 901.

Appellant contends that it was entitled to an instructed verdict and judgment non obstante veredicto because the minor, Jim Watson, and his father were both guilty of contributory negligence as a matter of law. We do not agree. The testimony of the minor plaintiff as well as of the two eye-witnesses to the accident, regarding the manner in which the scooter was being operated, constitutes evidence of

probative force that the minor was in the exercise of ordinary care. Appellant's witness, Police Officer Fisher, testified in effect that he found no evidence of any improper driving. The evidence also shows that the minor had had considerable experience and ability in operating the scooter. There is no merit in appellant's contention that the trial court should have entered judgment for it as a matter of law on the asserted ground that the father's entrustment of the scooter to his son was the sole proximate cause of the accident. Appellant's witness Fisher admitted that a 14 year old boy could become experienced enough to handle a scooter of the type young Watson was operating at the time of the accident.

■ We find no merit in the contention that the hole was open and obvious and that hence young Watson assumed the risk. Watson explained that he saw the hole only "a fraction of a second" before he hit it because it blended with the pavement. Another witness testified the hole was not readily noticeable until one got right at it. Appellant's witness Fisher conceded that the hole was not something that would be expected, and would not be apparent until one got fairly close to it.

■ Appellant complains of the refusal of the trial court to give some 20 requested special issues. In our opinion these requested issues were properly refused by the court. In the case of most of such issues there is no supporting competent evidence. Additionally, a number of such issues are not in substantially correct form. It would unduly prolong this opinion for us to take up each issue and discuss them all seriatim. A number of the issues inquire as to alleged defects in the scooter. The only testimony referred to by appellant is that of William H. Tonn, who testified merely to speculative possibilities. He did not see the scooter until nearly two years after the accident, nor until after it had been exposed to weather conditions and to handling by children who played with it, over a

considerable period of time. At no time did Mr. Tonn testify that the scooter was defective in the various particulars he mentioned, at the time of or immediately before the accident of April 20, 1959. Indeed, he was not in a position to so testify. The testimony of the Watsons clearly shows that after the secondhand scooter had been purchased by Mr. Watson, Sr., numerous repairs were made on it and that it was in good operating condition at the time of the accident in question.

■ A number of such issues were not substantially correct. They did not comply with the requirements of Rule 279, Texas Rules of Civil Procedure. For example, in the series of issues relating to the condition of the fuel line on the scooter, the inquiry was made whether the alleged defect "was known to or should have been known" to the minor plaintiff and his father. The language "should have been known" is incomplete by virtue of the failure to include the standard of ordinary care. The issue was multifarious including both actual knowledge and erroneous constructive knowledge inquiries. Furthermore, requested issue No. 5 is multifarious and duplicitous by reason of one issue inquiring as to negligence without designating whose negligence was being inquired about, so that the issue might apply to either Mr. Watson or the minor, or both. Similar incorrectness is found in all of the refused issues Numbered 8 to 17, inclusive.

■ The requested issue relative to the alleged "open and obvious" character of the hole includes multiple issues in a single question, and it is legally incorrect in applying the test or standard of constructive rather than actual knowledge in connection with such theory. Halepeska v. Callihan Interests, Inc., Tex.Sup.1963, 371 S.W.2d 368.

■ Defendant's requested Instruction No. 2 is a comment by the court to the effect that Mr. Watson, Sr., did not exercise ordinary prudence in his affording his son

proper medical treatment. It is also incorrect in that it refers to Special Issue No. 20, which inquires as to the reasonable amount for medical and hospital services beyond the date of trial. The law is well settled that parental negligence is not imputable to a minor's cause of action. Thacker v. J. C. Penney Company, 254 F. 2d 672, 5th Cir.1958, and authorities cited.

The next group of points complain of the error of the court in permitting Anthony Bommarito to testify, since he was not listed as a witness in appellee's claim filed with the City. Mr. Bommarito was not a witness to the accident in question. His testimony was largely confined to the notices given by him to the City of the hole in the street. We have carefully examined the statement of facts and fail to find any evidence of probative force that appellees knew that Mr. Bommarito was to be a witness in the case at the time their claim was filed with the City. Appellant does not contend that the record conclusively establishes that witness Bommarito was known to be a witness before the claim was filed or within the 90 day notice period. Mr. Bommarito testified that he estimated that he was first contacted by appellees' attorney about three months after the accident and that it could have been longer. He had never met Mr. and Mrs. Watson and did not know them. The attorney for appellees testified it was at least four months following the accident before he first learned of and contacted Mr. Bommarito. In City of Houston v. Cambeilh, Tex.Civ.App., 333 S.W.2d 192, writ ref., n. r. e., this Court said: "In any event, the trial court will be presumed to have found the Cambeilhs didn't know of such witnesses because the evidence supports such a conclusion. If they didn't know of the witnesses, they couldn't list them."

Moreover, appellant waived any complaint as to the admissibility of Mr. Bommarito's testimony for the reason that no objection or motion of any kind was presented until after the witness had testified and was excused. In the notice given to the City, appellees stated the names and addresses of the known eye-witnesses, and expressly put the City on notice that such witnesses as later became known would also be relied upon. Furthermore, appellant is not in a position to complain with respect to the testimony given by Mr. Bommarito as to the notices he gave the City for the reason appellant's counsel stipulated that so far as the notice was concerned, it would be agreeable if there was any fact question to let the trial judge handle it. When the matter was presented to the court near the end of the testimony, the court stated:

"I thought that was the stipulation made, but whether you made it or not, I will overrule you. * * *
"* * * If it becomes necessary for a finding of fact, I will consider that it was the thing covered by your stipulation."

Appellant's Points 50 through 54 and 57 through 62, inclusive, complain of the error of the court in granting appellees' motion in limine and ordering appellant's counsel to refrain from reading or referring to certain allegations in its pleadings and from asking questions relative to the same, without first obtaining a ruling of the court outside the presence and hearing of the jury with regard to any theory of admissibility of such matters.

Appellees' motion in limine was directed mainly to the facts that the minor did not have a proper license to operate the motor scooter and that it had not been inspected pursuant to the alleged requirements of Secs. 140–142 of Art. 6701d, Vernon's Ann. Revised Civil Statutes of Texas. Neither the pleadings nor evidentiary claims made by appellant are material with respect to the minor's cause of action since the failure to have a license was not a proximate cause of the accident in question. Langdeau v. Pittman, Tex.Civ.App., 337 S.W.2d 343, 360, writ ref., n. r. e.; Hanson v. Green, Tex.Civ.App., 1960, 339 S.W.2d 381, 383, writ ref. The same rule would apply to

inspection certificates, assuming that a certificate is required for a motor scooter.

 Appellant complains of the rulings of the court excluding reference to the minor's adjudication as a juvenile delinquent and to several prior instances of alleged misconduct, since they would relate to his competency to operate the motor scooter, the negligence of the father in entrusting the same to him, the boy's credibility, and damages. Such testimony as to the credibility and delinquency of the minor was inadmissible as a matter of law. Article 2338–1, Sec. 13, Vernon's Annotated Texas Statutes. With respect to damages, such testimony would be without probative force in the absence of evidence that such conduct manifested a physical or mental condition relating to items of damage sought. McCarty v. Gappelberg, Tex.Civ. App., 273 S.W.2d 943, writ ref., n. r. e. With respect to negligent entrustment by the father, it will suffice to say that the minor's failure to have a license and his prior misconduct would be immaterial as concerns the father's cause of action in view of his stipulation that any negligence on the minor's part would be imputed to him, and the well established law that in order to show proximate causation of an accident resulting from negligent entrustment, it is necessary to show negligence on the part of the driver of the vehicle which proximately caused such accident. Mundy v. Pirie-Slaughter Motor Co., 1948, 146 Tex. 314, 206 S.W.2d 587; Ferris v. Stableford, Tex. Civ.App., 248 S.W.2d 186; Luvual v. Henke & Pillot, Division of Kroger Co., Tex.Civ. App., 1963, 366 S.W.2d 831, writ ref., n. r. e.

 It was not reversible error for the court to enter the in limine order after announcement of ready by the parties, since an in limine motion is a proper way of reaching objectionable matters that might get before the jury through the reading of the pleadings or interrogation of witnesses. Texas Employers' Ins. Ass'n v. Poe, 1953, 152 Tex. 18, 253 S.W.2d 645; Rial v. Curtis, Tex.Civ.App., 274 S.W.2d 117, writ ref., n.

r. e. Moreover, the order of the trial court did not prevent appellant from offering such proof but merely required that he first approach the bench and obtain a ruling with respect to its admissibility and relevancy. Any error on the part of the court in entering its order in limine cannot be shown to have been harmful since appellant failed to establish the factual relevancy of any of the objectionable matters during the trial.

 The court properly granted a summary judgment against the City on its cross-action for contribution and indemnity against Watson, Sr. since the father under the laws of this State is not liable to his unemancipated child in the absence of an intentional or wilful wrong. Aboussie v. Aboussie, Tex.Civ.App., 270 S.W.2d 636 (1954), writ ref. The rule is well established that neither contribution nor indemnity can be recovered from a party against whom the injured party has no cause of action. West Texas Utilities Co. v. Renner, Tex.Com.App., 1932, 53 S.W.2d 451; Patterson v. Tomlinson, Tex.Civ.App.1938, 118 S.W.2d 645, writ ref.; American Cooperage Co. v. Clemons, Tex.Civ.App.1963, 364 S.W. 2d 705, writ ref., n. r. e.; Robinson v. Ashner, Tex.Civ.App., 357 S.W.2d 611, aff'd Tex., 364 S.W.2d 223 (1963); City of Houston v. Selph, Tex.Civ.App., 356 S.W.2d 850.

 The court did not err in allowing a reasonable fee for the services of the guardian ad litem appointed by the court, and taxing same as a part of the court costs. The amount allowed the guardian ad litem lies largely within the discretion of the trial court and will not be set aside unless the evidence shows a clear abuse of discretion. Japhet v. Pullen, Tex.Civ.App., 153 S.W. 1188; 30 Tex.Jur.2d p. 727, § 73. We cannot say the court abused its discretion in view of the services rendered by the guardian ad litem and the amount involved in the case. A municipality is liable for court costs. Garrett v. City of Wichita Falls, Tex.Civ.App., 334 S.W.2d 624. The fee allowed the guardian ad litem was properly

chargeable as a part of the court costs. Rule 173, T.R.C.P.

Basing our opinion upon all of the evidence, we have concluded that the findings of the jury are supported by sufficient evidence and that none of such findings is so against the great weight and preponderance of the evidence as to be unjust. In re King's Estate, 1952, 150 Tex. 662, 244 S.W. 2d 660. All of appellant's points are overruled.

Judgment affirmed.